In re CREEKSTONE APARTMENTS ASSOCIATES, L.P., a Missouri Limited Partnership, Debtor.

FIRST TENNESSEE BANK NATIONAL ASSOCIATION, Plaintiff,

v.

RESOLUTION TRUST CORPORATION and Creekstone Apartments Associates, L.P., Defendants.

Bankruptcy No. 392–04511.
Adv. No. 93–0189A.

United States Bankruptcy Court, M.D. Tennessee.

Jan. 6, 1994.

Thomas H. Forrestor, Gullett, Sanford, Robinson & Martin, Nashville, TN, for debtor.

William R. O'Bryan, Jr., Robert M. Holland, Jr., Nashville, TN, for TE–Two Real Estate Ltd. Partnership.

## ORDER

GEORGE C. PAINE, II, Chief Judge.

## I. INTRODUCTION

The plaintiff, First Tennessee Bank National Association ("Trustee"), filed this adversary proceeding on April 26, 1993 against Creekstone Apartments Associates and the Resolution Trust Corporation ("RTC") as an interpleader action pursuant to Bankruptcy Rule 7022 and 28 U.S.C. § 1335 to determine the proper distribution of $167,260 currently held on deposit by the Trustee in the Reserve Account. Thereafter, Creekstone, the debtor in possession, filed a motion for summary judgment. TE–Two, successor-in-interest to the RTC, as receiver for Home Federal Savings Association of Kansas City, responded by also moving for summary judg-

ment. The cross motions for summary judgment raised the following issues for determination by the court:

(1) Whether Creekstone has an "equitable interest" in the Reserve Account funds under § 541(a)(1),

(2) Whether the RTC holds a valid, enforceable, and perfected security interest in the Reserve Account funds,

(3) Whether the Trustee is entitled to its costs, attorneys' fees, and other expenses incurred as a result of filing this interpleader action.

The pleadings on file indicate there are no material issues and disputed facts. The issues presented are rather matters of law and are ripe for summary judgment.

The court finds that Creekstone had an equitable interest in the Reserve Account funds, and such funds thus became property of the bankruptcy estate upon the petition date under § 541(a)(1). Further the RTC maintained a valid, enforceable, and perfected security interest in these funds as of the petition date. Finally, the Trustee is entitled to be paid its costs, counsel fees, and other related expenses out of the Reserve Account funds upon their distribution into the bankruptcy estate.

## II. DISCUSSION

### A. Creekstone's Interest in the Reserve Account Funds

Under 11 U.S.C. § 541(a)(1), Creekstone's bankruptcy estate includes "all legal or equitable interests of the debtor in property as of the commencement of the case." The court finds that the debtor has at least an equitable interest in the Reserve Account.

Section 510 of the Trust Indenture, executed by Metro as Issuer and the Trustee, explicitly recognized Creekstone's equitable interest in the Reserve Account funds. Under Section 501 of the Trust Indenture, the Reserve Account was created as a separate account under the administration of the Trustee. The amount of $167,260 was left over in the Reserve Account after the Trustee paid off all bond issues from funds supplied by the Home Savings letter of credit.

Section 510 controlled how these remaining funds were to be paid out. It provided that Reserve Account funds would be remitted to Creekstone after payment to the RTC of the funds owing to it under the Reimbursement Agreement. Section 510 states:

> *Final balances.* Upon the deposit with the Trustee of monies sufficient to pay all principal of, premium, if any, and interest on the bonds, and upon satisfaction of all claims against the Authority [Metro] hereunder, ... all monies remaining in all Funds in Accounts, except monies necessary to pay principal of, premium, if any, and interest on the Bonds ... *shall be remitted first, to the Bank* [Home Savings, i.e., the RTC] *to the extent of amounts remaining unpaid under the Reimbursement Agreement and second, to the Borrower* [Creekstone]. (emphasis added).

Both the RTC and Creekstone maintain an interest in the Reserve Account based on the different contingencies and priorities to its funds stated in Section 510. Consequently, Creekstone has at least an equitable interest in the Reserve Account funds.

■ TE–Two's argument to the contrary, relying on *In re OPM Leasing Services, Inc.,* 46 B.R. 661 (Bankr.S.D.N.Y.1985), is misplaced. *OPM Leasing* deals with the issue of whether the debtor retains an equitable interest in funds which the debtor deposited into an escrow account for the benefit of a third party. The court held that by setting up an escrow account and transferring funds into it, the debtor irrevocably divested itself of all interests, legal and equitable, in the escrowed funds. *Id.* at 667–68. Consequently, " 'money held in escrow [by a debtor] is not property which vests in the trustee in bankruptcy.' " *Id.*

In the present case, Creekstone, the debtor, is not holding money in escrow as the grantor for the benefit of some third party. Rather, Creekstone is a contingent grantee of money held in a trust account, i.e., the Reserve Account, managed and administered by the Trustee for the potential benefit of Creekstone. Creekstone has not irrevocably divested itself of its contingent interest in the Reserve Account. Accordingly, *OPM Leas-* *ing* does nothing to question Creekstone's equitable interest in the Reserve Account.

Accordingly, the court finds that Creekstone had an equitable interest in the Reserve Account funds prior to bankruptcy. The court thus concludes that the Reserve Account funds became property of the bankruptcy estate upon the petition date pursuant to § 541(a)(1).

**B. The RTC's Interest in the Reserve Account Funds**

■ The creation and perfection of a security interest in a deposit account is governed by the common law and not the UCC. Tenn.Code Ann. § 47–9–104(*l*). Under the common law, a perfected security interest in a deposit account is created by a pledge. *In re Interstate Department Stores, Inc.,* 128 B.R. 703, 705 (Bankr.N.D.N.Y.1991); *Matter of Zimmerman,* 69 B.R. 436, 438 (Bankr. E.D.Wis.1987) (both citing *Restatement of Security* § 1 (1941)). A pledge has two elements: (1) the pledgor and the pledgee must execute a contract whereby the deposit account is to be held as security and (2) the pledgee must have exclusive control over the funds in the account. *Restatement of Security* § 1 cmt. a (1941). A third party may take possession of a pledged deposit account as an agent for the pledgee if (1) the pledgor assents and (2) the third party agent/ pledge holder is notified that the account has been pledged to the pledgee. *Restatement of Security* § 8 (1941).

■ The Reimbursement Agreement in Section 2.07 granted the RTC a security interest in the Reserve Account through the following language:

> *Security Interest in Funds.* As additional security for the obligations, covenants, warranties and representations of the Borrower [Creekstone] under this Agreement, the Borrower hereby grants, pledges and assigns to the Association [Home Savings, i.e., the RTC] a security interest in all of the Borrower's right, title and interest in and to any and all funds now or hereafter on deposit in or otherwise a part of any fund created under the Indenture and in the proceeds realized from the investment of any such funds....

The RTC, however, never obtained exclusive control or possession of the Reserve Account. Instead, the Trustee maintained sole possession of the Reserve Account as its manager and administrator under Section 501 of the Trust Indenture.

Nevertheless, the RTC perfected its security interest because the Trustee had exclusive control over the Reserve Account as the RTC's agent pursuant to the Reimbursement Agreement. Section 2.07 further provides:

> ... and the Borrower hereby consents to the Association's [Home Savings, i.e. the RTC] appointment of a Trustee as the Association's agent to perfect the Association's pledge, assignment and security interest of and in such funds.

This language satisfies the requirements of *Restatement of Security* § 8 (1941) for when an agent can take possession of a deposit account on behalf of the pledgee (i.e. the RTC) and perfect the pledgee's security interest in the account. In Section 2.07, the pledgor (i.e. Creekstone) assented to the RTC's appointment of the Trustee as agent to perfect the RTC's security interest. In addition, the Trustee as agent was notified that the Reserve Account had been pledged to the RTC because the Trustee executed the Trust Indenture, which in Section 510 referred to the RTC's rights under the Reimbursement Agreement.

Consequently, the Trustee was fully aware of its role as agent to perfect the RTC's security interest in the Reserve Account. The RTC thus held a valid, enforceable, and perfected security interest in the Reserve Account funds.

### C. Trustee's Costs, Attorneys' Fees and Other Expenses

The Trustee is entitled to its costs, attorneys' fees, and any other expenses which it has been compelled to incur relating to this proceeding. As a matter of federal policy, such amounts are generally awarded, in the discretion of the court, to a plaintiff who initiates an interpleader action as a mere disinterested stakeholder. *Prudential Ins. Co. of America v. Boyd,* 781 F.2d 1494,

1497 (11th Cir.1986); *Life Insurance Company of North America v. Nava,* 667 F.Supp. 279, 280 (M.D.La.1987). Further, under Section 1002 of the Trust Indenture, it provides:

> *Fees, Charges and Expenses of the Trustee.* The Trustee shall be entitled to the payment of and/or reimbursement for reasonable fees for its ordinary services rendered hereunder and all advances, agent and counsel fees and other ordinary expenses reasonably and necessarily made or incurred by the Trustee in connection with ordinary services.... Upon the occurrence of an Event of Default and during its continuance, the Trustee shall have a lien with right of payment prior to payment on account of principal of, redemption premium, if any, or interest on any Bond, upon all moneys in its possession under any provisions hereof for the foregoing advances, fees, costs and expenses incurred.

For the foregoing reasons, the Trustee may be paid its costs, attorneys' fees, and other expenses out of the Reserve Account.[1]

IT IS SO ORDERED.

---

1. TE–Two is in support of the Trustee's position regarding this matter.