**In re CREEKSTONE APARTMENTS ASSOCIATES, L.P., a Missouri Limited Partnership, Debtor.**

**CREEKSTONE APARTMENTS ASSOCIATES, L.P., a Missouri Limited Partnership, Plaintiff,**

v.

**RESOLUTION TRUST CORPORATION as Receiver for Home Federal Savings Association of Kansas City and First Tennessee Bank National Association, Trustee, Defendants.**

Bankruptcy No. 392–04511.
Adv. No. 93–0189A.

United States Bankruptcy Court,
M.D. Tennessee.

June 1, 1994.

Thomas H. Forrestor, Gullett, Sanford, Robinson & Martin, Nashville, TN, for debtor/plaintiff.

William R. O'Bryan, Jr., Robert M. Holland, Jr., Nashville, TN, for TE–Two Real Estate Ltd. Partnership.

## MEMORANDUM REGARDING MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY

GEORGE C. PAINE, II, Chief Judge.

I. Procedural and Substantive Background:

On February 3, 1993, a final hearing was held on a motion for relief from the automatic stay imposed by 11 U.S.C. § 362(a) filed by the Resolution Trust Corporation ("RTC"), the predecessor-in-interest to TE–Two Real Estate Limited Partnership ("TE–Two"), seeking to obtain possession of the Creekstone Apartments property. Arguing primarily under § 362(d)(2), the RTC contended that the debtor lacked equity in the apartment property and the property was not necessary to an effective reorganization. According to the RTC, the debtor's proposed Chapter 11 plan had no reasonable possibility of confirmation because it unfairly discriminated against the RTC under 11 U.S.C. § 1129(b)(1) and improperly classified the claims of unsecured creditors under 11 U.S.C. § 1122.

By order dated April 12, 1993, the court denied the RTC's motion and held that the unfair discrimination and improper classification issues were more appropriate for determination at confirmation rather than in a relief stay motion. The court noted that the debtor's plan could be amended prior to the confirmation hearing, rendering the RTC's contentions in its relief stay motion moot. The court emphasized the importance of proceeding quickly to confirmation.

After appeal to the United States District Court for the Middle District of Tennessee, Judge Wiseman remanded the case back to this court with instructions to consider the merits of the unfair discrimination and improper classification issues raised by the RTC. Judge Wiseman further ordered that the rehearing of these two issues be held prior to a confirmation hearing.

The court subsequently conducted a rehearing on these issues on October 27, 1993. Prior to this hearing, TE–Two was substituted for the RTC as a party-in-interest by order of the court.

With respect to the § 1122 issue, the court found that the debtor's plan did not improperly classify or "gerrymander" the claims of unsecured creditors. The court, however, took the unfair discrimination issue of § 1129(b)(1) under advisement. This issue remains to be resolved.

On April 5, 1994, a preliminary hearing was held on a second motion for stay relief filed by TE–Two seeking to obtain possession of the following categories of funds:

(1) certain interpled funds held in the Reserve Account subject to a perfected security interest in favor of TE–Two pursuant to the court's decision in *First Tenn. Bank Nat'l Ass'n v. Resolution Trust Corp. (In re Creekstone Apartments Assocs.)*, 165 B.R. 851 (Bankr.M.D.Tenn.1994) (the "interpleader action"),

(2) pre-petition rents held by the debtor subject to a perfected security interest in favor of TE–Two pursuant to the court's

decision in *Creekstone Apartment Assocs. v. Resolution Trust Corp. (In re Creekstone Apartments Assocs.),* 165 B.R. 845 (Bankr. M.D.Tenn.1993) (the "rents/conversion action") and in the court's subsequent April 14, 1994 Memorandum Regarding Debtor's Motion to Alter or Amend,

(3) post-petition rents accumulated by the debtor in which TE–Two claimed a perfected security interest pursuant to 11 U.S.C. § 552(b) and the terms of the Second Deed of Trust and Security Agreement executed by the debtor assigning all leases and rents to the RTC.

As in the first motion, TE–Two primarily argued for relief under § 362(d)(2) claiming that the debtor lacked equity in the funds listed above and the funds were not necessary to an effective reorganization. TE–Two also renewed its February 3, 1993 request for stay relief to obtain possession of the Creekstone Apartments property. On May 13, 1994, TE–Two filed a motion to set a final hearing on this matter.

## II. The RTC's Motion For Relief From the Automatic Stay (The First Motion)

### A. The Burden of Proof Under § 362(d)(2):

11 U.S.C. § 362(d)(2) provides in relevant part:

(d) On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—

. . . .

(2) with respect to a stay of an act against property under subsection (a) of this section, if—

(A) the debtor does not have an equity in such property; and

(B) such property is not necessary to an effective reorganization.

The movant has the burden of proving the § 362(d)(2)(A) issue, i.e. that the debtor lacks equity in the property at issue. 11 U.S.C. § 362(g)(1). The burden then shifts to the debtor to prove the property is "necessary to

an effective reorganization" under § 362(d)(2)(B). *See* 11 U.S.C. § 362(g)(2).

In the present case, the parties have stipulated that there is no equity in the Creekstone Apartments real property owned by the debtor. The debtor thus has the burden of proof to show under § 362(d)(2)(B) that the apartment property is "necessary to an effective reorganization."

### B. The Unfair Discrimination Argument:

■ The RTC argued that the apartment property was not necessary to a successful reorganization because the debtor's proposed Chapter 11 plan had no realistic chance of confirmation. Because the RTC was an impaired class receiving 10% of its Class 7 deficiency claim, it undoubtedly would not consent to the proposed plan. As such, a consensual confirmation under 11 U.S.C. § 1129(a) would be impossible. *See* 11 U.S.C. § 1129(a)(8).

Instead, the debtor would have to seek confirmation under the cram down provisions of 11 U.S.C. § 1129(b). Under § 1129(b)(1), a proposed plan cannot unfairly discriminate against an impaired, unaccepting class.

According to the RTC, the plan unfairly discriminated between payment of Class 5A/5B general, unsecured claims and TE–Two's Class 7 unsecured, deficiency claim. After the debtor's fourth amendment, the plan proposed to pay 10% of TE–Two's Class 7 unsecured claim, while paying 80% of the Class 5A/5B unsecured claims on the effective date of the plan and 20% over time. Because the plan allegedly violated the cram down standards of § 1129(b)(1), the RTC contended it had no reasonable possibility of confirmation. Relief from the stay, therefore, should be granted under § 362(d)(2)(B).

### C. The *Timbers* Standard:

In *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988), the Supreme Court explained the debtor's burden under § 362(d)(2)(B) as follows:

Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is "necessary to an effective reorganization." See § 362(g).

What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means ... that there must be "a reasonable possibility of a successful reorganization within a reasonable time." ... And while the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan, ... even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief. (footnotes omitted).

*Id.* at 375–76, 108 S.Ct. at 632–33.

Judge Sellers in *In re Ashgrove Apartments, Ltd.,* 121 B.R. 752, 756 (Bankr. S.D.Ohio 1990), described the *Timbers* standard as the following two-part test for determining when the debtor has met its burden under § 362(d)(2)(B):

(1) the debtor must show a reasonable possibility of a successful reorganization, and

(2) this showing must come within a reasonable period of time.

She acknowledged that this standard is a "balancing test" that

has different meanings depending on the stage of the proceeding....

... [I]n the initial stages of a Chapter 11 proceeding, the debtor should be granted significant leeway in attempting to establish that successful reorganization is a reasonable possibility. However, as the case progresses, so too does the debtor's burden of proving that successful reorganization may be reasonably expected. Even at later stages, a motion for relief from stay should not be turned into a confirmation hearing; that is not the debtor's bur-

den of proof. Rather, the test should be viewed as a continuum with the scales tipping in favor of the debtor in the early stages and the burden of proof becoming greater in the later stages.

*Id.*

In limited partnership, single-asset debtor cases dealing with income-producing properties, Judge Sellers held that, on the first prong of the test, the debtor must at a minimum show that:

(1) It is moving meaningfully to propose a plan of reorganization....

(2) The proposed or contemplated plan has a realistic chance of being confirmed. This proposed or contemplated plan must provide that:

(a) The lender's allowed secured claim can be realistically valued and paid over time ... from the debtor's net operating income generated by its property, or

(b) Some other means of proposing a confirmable plan are realistically contemplated....

(3) The proposed or contemplated plan is not patently unconfirmable. However, *first impression or unsettled legal issues relating to confirmation disputes will not be decided in the context of a relief stay proceeding.*

*Id.* at 756–57. (emphasis added).[1] In *In re Northgate Terrace Apartments, Ltd.,* 126 B.R. 520 (Bankr.S.D.Ohio 1991), Judge Sellers further held:

To show a reasonable possibility of a successful reorganization, Northgate must establish that it is "moving meaningfully" toward a reorganization which is in prospect. *Timbers* [484 U.S. at 374], 108 S.Ct. at 632. That showing necessarily must be stronger as the case ages or if the financial information shows a marginal operation.

---

1. The expert in this circuit on application of § 362(d)(2)(B) in limited partnership, single-asset debtor cases is Judge Sellers. She has written numerous opinions explaining and clarifying the *Timbers* Court's standard. These opinions include: *In re Snapwoods Apartments, Ltd.,* 153 B.R. 524, 525–26 (Bankr.S.D.Ohio 1993); *In re Rollingwood Apartments, Ltd.,* 133 B.R. 906 (Bankr.S.D.Ohio 1991); *In re Northgate Terrace Apartments, Ltd.,* 126 B.R. 520 (Bankr.S.D.Ohio 1991); *In re Willowood East Apartments, Ltd.,* 113 B.R. 392, 398 (Bankr.S.D.Ohio 1990); *In re Planned Systems, Inc.,* 78 B.R. 852, 866 (S.D.Ohio 1987). Another court in this circuit to adopt Judge Sellers' analysis is *Matter of Holly's, Inc.,* 140 B.R. 643, 697–705 (Bankr.W.D.Mich. 1992) (the balancing test is analogous to trap shooting with clay pigeons, i.e. the further out the pigeon flies, the more accurate the shooter (plan proponent) must be).

*Although any proposed plan must have a realistic chance of being confirmed, legal questions of first impression relating to confirmation issues will not be decided in the context of a relief from stay proceeding.*

. . . .

The question before the Court at this time is not whether every aspect of Northgate's proposed plan would be sustained over objections at confirmation, but rather, whether there is a reasonable likelihood that the debtor will have the financial means available to obtain confirmation of a plan which is being proposed, subject to permissible pre-confirmation modifications.

. . . .

*Unless the proposed plan is patently unconfirmable or clearly unfeasible, the debtor should be permitted to attempt to achieve confirmation. Id.* at 523, 525. (emphasis added).

In *Ashgrove,* a single-asset debtor filed a plan prior to the creditor's motion for relief stay. *Ashgrove,* 121 B.R. at 758. The debtor proposed to use accumulated post-petition rents to partially fund the plan. *Id.* at 758–59. Judge Sellers identified this as an issue better left for a confirmation hearing and declined to address it. *Id.* at 759.

The court denied the creditor's motion for stay relief because the debtor proposed a plan that was not "patently unconfirmable" and provided "more concrete evidence with which to work." *Id.* The court further noted that the case was close to a confirmation hearing and denial of the motion would not unduly prejudice the creditor's rights. *Id.*

In *Northgate Terrace,* the creditor asserted improper classification, absolute priority rule problems, and usage of post-petition rents to show that the debtor's proposed plan was patently unconfirmable. *Northgate Terrace,* 126 B.R. at 525. Again, Judge Sellers denied stay relief, in part, because these assertions raised confirmation issues to be determined "in the next several months as part of the confirmation process." *Id.*

 Thus, assuming the case is in its initial stages prior to the first confirmation hearing, as long as the debtor files a proposed plan that is not patently unconfirmable and begins moving meaningfully to reorganization, § 362(d)(2) is not a remedy for the creditor. In fact, in the early stages, the relief stay motion can be denied without the debtor ever filing a proposed plan. The debtor merely must demonstrate a reasonable probability that it can propose a successful plan at some reasonable time in the future.

### D. Application of *Timbers* to the Present Case:

Although it has been two years since this case was filed, the parties have failed to reach the initial confirmation hearing, now set for June 22, 1994. This case thus remains in its initial stages. Consequently, under Judge Sellers' balancing test, the debtor need only show that the proposed plan is not patently unconfirmable and is moving meaningfully toward reorganization.

The court is convinced that the debtor has met the minimal burden of this balancing test. The debtor has proposed a plan, the initial confirmation hearing is only one month away, and the plan is not patently unconfirmable. The court finds TE–Two's unfair discrimination argument to be a confirmation issue more properly determined at the upcoming confirmation hearing. The debtor should not be denied the opportunity to attempt to achieve a confirmation at this early stage in the reorganization process. For these reasons, the court denied the RTC's motion for relief stay in its original April 12, 1993 order.

The district court, however, has explicitly mandated that the merits of the unfair discrimination issue be addressed prior to confirmation. Other courts outside our circuit have allowed confirmation issues to be resolved in relief stay motions prior to a confirmation hearing. *See In re 266 Washington Assocs.,* 141 B.R. 275, 281 (Bankr.E.D.N.Y. 1992). Accordingly, the court will undertake the appropriate analysis.

### E. The *Aztec* and *Creekside Landing* Standard:

Under the cram down provisions of § 1129(b)(1), for a plan to be confirmed it

must not "discriminate unfairly" against an impaired class that has not accepted the plan. It is clear that the debtor's plan discriminates between payment of the Class 7 unsecured, deficiency claim held by TE–Two and the Class 5A/5B general, unsecured claims. The question, however, is whether this discrimination is "unfair."

Judge Lundin's two opinions, *In re Aztec Co.*, 107 B.R. 585 (Bankr.M.D.Tenn.1989) and *In re Creekside Landing, Ltd.*, 140 B.R. 713 (Bankr.M.D.Tenn.1992), established the standard of review in this court for determining unfair discrimination in Chapter 11 cram down. As noted in *Aztec*, some courts have applied the mechanical rule that to avoid unfair discrimination all unsecured claimholders must be paid the same percentage under the plan. *Id.* at 588–89. Judge Lundin, however, concluded that this "mechanical approach threatens the vitality of the word 'unfairly' in § 1129(b)(1)." *Id.* at 589.

■ In *Aztec*, 107 B.R. at 590, and later in *Creekside Landing*, 140 B.R. at 716, Judge Lundin approved the following four-factor test for determining whether discrimination in the payment of claims was proposed fairly in a Chapter 11 cram down case:

(1) Whether the discrimination is supported by a reasonable basis,

(2) Whether the debtor can confirm and consummate a plan without the discrimination,

(3) Whether the discrimination is proposed in good faith, and

(4) The treatment of the classes discriminated against.

These factors are to be analyzed on a case-by-case basis. *Aztec*, 107 B.R. at 589.

### (1) Is the discrimination supported by a reasonable basis?

Judge Lundin instructed in *Aztec*, 107 B.R. at 590, that a reasonable basis supporting discrimination was proof that the proposed discrimination protected a relationship with specific creditors that the debtor needed to reorganize successfully. Accordingly, the debtor in the present case attempted to show that the plan's favorable treatment of Class 5A claims over TE–Two's Class 7 claim was

necessary to protect the debtor's valuable business relations with its trade creditors.

The court found the testimony of Joseph Wright, the vice president and chief financial officer of the debtor's general partner, and Robert Peterson, the regional property manager for the debtor's managing agent, persuasive on this issue. They testified that the Class 5A claimholders generally were trade vendors whose services and products were essential to the successful operation of the Creekstone Apartments. The debtor has developed business relationships with these vendors over several years which cannot easily be replaced. Failure to pay these vendors in full will likely lead to their refusal to do business with the debtor, resulting in serious harm to the debtor's post-confirmation reorganization efforts.

TE–Two suggested that, because these vendors hold recourse claims against the general partner, whatever the debtor fails to pay them can be collected from the general partner. Such payment, TE–Two claims, would satisfy the vendors' claims in full and serve to maintain the vendor's business relations with the debtor.

The court disagrees. As Peterson testified, if the debtor itself, as a separate business entity, failed to payoff these vendors in full, the debtor's future credit-worthiness and credibility with these and other potential vendors would be jeopardized. Moreover, the general partner may not be financially able to pay these claims. Protection of the debtor's credit-worthiness with its vendors is vital to its successful reorganization. Accordingly, the court finds the discrimination at issue to be founded on a reasonable basis.

■ The debtor further argued that the disparate treatment at issue was justified by the fact that TE–Two's claim is nonrecourse, whereas the vendors' claims are recourse. As Judge Lundin stated in *Aztec*, 107 B.R. 592, such differences can be considered in the unfair discrimination calculus, but are not "outcome determinative." The court, therefore, gives little weight to this argument.

(2) Can the debtor confirm and consummate its plan without the discrimination?

It is clear from the testimony of Mr. Wright that the debtor could not possibly pay TE–Two's Class 7 unsecured deficiency claim, estimated at $7.6 million, under the same terms as it proposes to pay the Class 5A/5B unsecured claims. The debtor amended its plan to increase payment of TE–Two's Class 7 claim from 7.5% to 10% because it had accumulated more post-petition cash than it had expected. This 10% payment, however, is the maximum the debtor can pay and be reasonably assured of consummating an effective reorganization.

Moreover, a mere 10% payment of Class 5A claims would jeopardize business relations with its trade vendors. The debtor thus has no flexibility to lower Class 5A claims to the payment level of Class 7. Consequently, the debtor cannot complete a successful reorganization without such discrimination.

(3) Is the discrimination proposed in good faith?

According to Judge Lundin, to determine whether discrimination is proposed in good faith, it is relevant to consider whether the discrimination primarily preserves assets for or otherwise benefits the debtor, yet offers no corresponding benefit for creditors. *Id.* at 590. In the *Aztec* case, the debtor's plan proposed to pay in full certain insider claims, which the record indicated were claims whose payment was not necessary to a successful reorganization. *Id.* at 591. At the same time, the major creditor was to receive a de minimis payment on its deficiency claim. *Id.* In addition, a proposed $500,000.00 recapitalization of the debtor was found to entirely benefit the owners and insiders. *Id.* Consequently, Judge Lundin denied confirmation because of unfair discrimination. Similarly, in *Creekside Landing,* Judge Lundin denied confirmation, concluding that the plan's discrimination benefited "the owners of the debtor with no corresponding benefit for general creditors." *Creekside Landing,* 140 B.R. at 716.

In the present case, however, lack of good faith in the proposed discrimination was less evident than it was in either *Aztec* or *Creek-side Landing.* After the plan's third amendment, the insider claims totaling approximately $165,000.00 in prepetition liabilities were classified as Class 8 claims receiving no payment. The third amendment also reclassified the general partner's $155,000.00 claim from Class 5 to Class 8, where it will be paid nothing under the plan. In addition, the amendment terminated and cancelled the general partner's interest in the debtor. In general, the record contained insufficient evidence that owners or insiders are benefiting from the plan's discrimination in the manner assailed in *Aztec* or *Creekside Landing.*

(4) What was the treatment of the classes discriminated against?

Judge Lundin described this test as whether there is "a meaningful recovery for creditors disadvantaged by the discrimination." *Aztec,* 107 B.R. at 591. The plan's proposed 10% payment of TE–Two's Class 7 claim amounts to approximately $760,000.00 on an unsecured, deficiency claim. The debtor has amended the plan to increase this payment from 7.5% due to additional cash reserves that have accumulated post-petition. Based on the unsecured nature of the claim and the debtor's willingness to allocate excess cash reserves to its payment, the court finds that TE–Two is receiving a "meaningful recovery" on its claim. This, of course, may change based on a new valuation of the property necessitated by the delay in this case.

For the foregoing reasons, the court finds that the debtor's proposed Chapter 11 plan does not unfairly discriminate between the Class 5A/5B and Class 7 claimholders pursuant to § 1129(b)(1). Accordingly, the RTC's motion for relief from the automatic stay is denied on remand from the district court.

III. TE–Two's Motion For Relief From the Automatic Stay (The Second Motion)

A. TE–Two's Interest in the Listed Funds:

At the preliminary hearing on the second relief stay motion, TE–Two asserted a perfected security interest in the three categories of funds previously listed. The court previously determined that TE–Two pos-

sessed perfected security interests in certain interpled funds held in the Reserve Account and pre-petition rents held by the debtor. The court, however, has not directly addressed the status of post-petition rents held by the debtor.

The court held in the rents/conversion action of Dec. 27, 1993 that TE–Two perfected its security interest in pre-petition rents under Tennessee state law. This perfection also granted TE–Two a valid, perfected security interest in post-petition rents pursuant to the assignment of rents documents addressed in the court's opinion. Under 11 U.S.C. § 552(b), a pre-petition, perfected security interest in rents extends to such rents collected by the estate post-petition. The court thus finds that TE–Two possesses a perfected security interest with respect to all three listed funds, including post-petition rents held by the debtor.

### B. TE–Two's § 362(d)(2) Argument:

TE–Two further contended at the hearing, that the debtor had no equity in the funds. TE–Two's argument was simply that a perfected security interest in a dollar held in a deposit account was worth a dollar.

TE–Two's § 362(d)(2)(B) argument went as follows: The parties stipulated that TE–Two's allowed claim is in excess of $13 million. This claim is secured by a lien on estate property, including the Creekstone Apartments property and the funds listed above. Under 11 U.S.C. § 506(a), this claim would be secured "to the extent of the value of" TE–Two's interest in the estate property. Because of its perfected security interest in these funds, TE–Two's allowed, secured claim always would include these funds on a dollar-for-dollar basis.

Consequently, these monies cannot be applied to payment of administrative claims, general, unsecured claims, or TE–Two's allowed unsecured claims, as proposed under the debtor's plan. Instead, they must be applied to pay TE–Two's allowed, secured claim determined under § 506(a). Without the use of these funds to pay the claims proposed under the plan, the debtor could not propose a feasible plan of reorganization within a reasonable time. As a result, relief

from the stay should be ordered under § 362(d)(2)(B).

### C. The Final Hearing:

■ Once again TE–Two has raised an issue better reserved for the scheduled confirmation hearing, i.e. the issue of feasibility. However, because a final hearing has not been held on this issue, the court will deny TE–Two's motion. On May 13, 1994, TE–Two requested the court to set a final hearing on its motion. So as not to delay or continue the scheduled confirmation hearing, the court will continue the final hearing on this matter until some time after confirmation.

One issue that undoubtedly will be addressed at the confirmation hearing will be the feasibility of the debtor's plan of reorganization. If the plan is found to be feasible and confirmed, all issues raised in TE–Two's motion for stay relief will become moot. If, however, the plan is not confirmed, the court will then be in a position to rule quickly on the final hearing. All findings of fact and conclusions of law made in the confirmation hearing will be relevant to the determination of the relief stay issues in the final hearing. The standard enunciated in *Timbers* and its progeny will apply to make this determination.

### IV. Addendum:

There is no reason this case should have remained in an unconfirmed Chapter 11 posture for two years. The initial confirmation hearing should have been held within five months of filing. Had confirmation been denied, other competing plans could have been considered within two months. Alternatively, the court could have granted relief from the automatic stay pursuant to a *Timbers* determination as discussed above, dismissed the case, or converted it to a Chapter 7.

Nevertheless, getting to the initial confirmation hearing has been practically impossible because the primary creditor has appealed issues that could have been disposed of at an early confirmation hearing. The appeals have made any confirmation hearing inefficient, impractical, and potentially meaningless.

The Supreme Court envisioned a quick disposition of single-asset cases such as *Creekstone*, and this court has invariably pushed such cases to early confirmation hearings in accordance with *Timbers* if one or both of the parties requested it. Untold hundreds of hours have been expended and tens of thousands of dollars in attorneys' fees have been generated as a consequence of the creditor's actions. Moreover, the delay in reaching confirmation has now created a new issue for the court to resolve, namely, the disposition of $900,000.00 in additional, post-petition cash reserves held by the debtor.

All of this waste of the federal courts' time and the parties' resources could have been avoided had a confirmation hearing been held quickly, so all confirmation issues could have been resolved therein. Any party aggrieved by this court's resolution of the issues at the confirmation hearing could then have sought appellate review without a remand to the bankruptcy court. In other words, this case would be history had this procedure been followed.

Judge Wiseman previously ruled that this court should hold a valuation hearing close to the date of the confirmation hearing. Regardless, this court would have had to hold another valuation hearing because of the delay caused by the creditor's appeal even if the district court had not addressed it.

The court anticipates that this order will be appealed with further attorneys' fees generated and that the confirmation hearing currently scheduled for June 22, 1994 will be jeopardized.

Other similar cases have gone to confirmation on a "fast track," including cases handled by these attorneys. The court can only conclude this is a "scorched earth" litigation policy adopted by the RTC and TE–Two to wear down the debtor, further bankrupt an already bankrupt debtor, and "take out" the debtor's attorneys by suing them personally in district court on a relatively simple attorneys' fees matter.

Reiterating the obvious, had this strategy not been followed, the case would have been taken to an early confirmation hearing for an up/down determination and resolution in the fall of 1992. In short, the court feels that the Customs House has become *Bleak House,* and it is presiding over *Jarndyce v. Jarndyce.*

IT IS SO ORDERED.

### ORDER REGARDING MOTIONS FOR RELIEF FROM THE AUTOMATIC STAY

In accordance with the memorandum filed contemporaneously herewith, the Resolution Trust Corporation's motion for relief from the automatic stay and claims of unfair discrimination are denied on remand from the district court. In addition, the final hearing on TE–Two Real Estate Limited Partnership's motion for relief from the automatic stay is continued until after the June 22, 1994 confirmation hearing.

IT IS, THEREFORE, SO ORDERED.