In re SNYDERS DRUG STORES,
INC. and Drug Emporium,
Inc., et al., Debtors.

No. 03–44577.

United States Bankruptcy Court,
N.D. Ohio,
Eastern Division.

March 10, 2004.

Thomas Salerno, Esq., Jordan A. Kroop, Esq., Squire, Sanders & Dempsey, LLP, Phoenix, AZ, Richard Gurbst, Esq., Squire, Sanders & Dempsey, LLP, Cleveland, OH, for the Debtors.

Brett Miller, Esq., Thomas Pitta, Esq., Otterbourg, Steindler, Houston & Rosen, P.C., New York City, for the Creditors Committee.

Michael P. Richman, Esq., Mayer, Brown, Rowe & Maw, LLP, New York City, for Tops and Winchester.

Darlene Nowak, Esq., Marcus & Shapira LLP, Pittsburgh, PA, for the Lessors.

Andrew Turscak, Esq., Robert Kampfner, Esq., David Dedyo, Esq., White & Case, San Francisco, CA, for McKesson Corp.

Drew T. Parobek, Esq., Carrie M. Caldwell, Esq., Vorys Sater, Seymour & Pease LLP, Cleveland, OH, for Columbus Mall and Suburban Centers.

Daniel A. DeMarco, Esq., Hahn, Loeser & Parks LLP, Cleveland, OH, for Carlton Financial Corporation.

Richard Thomas, Esq., Youngstown, OH, for American Bank Note Company.

Matthew English, Esq., Vorys Sater, Seymour & Pease LLP, Cleveland, OH, for Gibson Management Group.

Andrew Vara, Esq., Office of the U.S. Trustee, Cleveland, OH, for the United States Trustee.

## MEMORANDUM OF OPINION RE CONFIRMATION

PAT E. MORGENSTERN–CLARRE, Bankruptcy Judge.

The chapter 11 debtors and unsecured creditors committee filed a joint second amended plan of reorganization that drew objections from several unsecured creditors.[1] The four basic objections to the plan are that it: (1) improperly classifies unsecured creditors whose claims arise out of the rejection of leases; (2) unfairly discriminates against those same creditors; (3) violates the absolute priority rule; and (4) improperly releases and exculpates certain parties. Creditor McKesson Corporation supports the plan. The court held a confirmation hearing on March 8, 2004.[2] Because the plan unfairly discriminates against an impaired class of creditors that rejected the plan, confirmation is denied. (Docket 477).

### JURISDICTION

Jurisdiction exists under 28 U.S.C. § 1334 and General Order No. 84 entered by the United States District Court for the Northern District of Ohio. This is a core proceeding under 28 U.S.C. § 157(b)(2)(L).

---

1. The remaining objecting creditors are Walden Property Associates 96–8, LLC; Shorewood Village Shopping Center, Inc.; Tops Markets, LLC and Winchester Center LLC, Columbus Mall, Inc. and Suburban Centers of Wisconsin, Inc., joined by 23 others; and Carlton Financial Corporation. (Docket 563, 564, 567, and 568). The debtors resolved the objections filed by American Bank Note Co., Pacific Employers Insurance Co., ID Media, Inc. and Initiative Media Worldwide, Inc.,

and Gibson Management Group, L.P. as stated on the record. (Docket 558, 561, 565, and 574).

2. The plan proponents presented their evidence through the declarations and direct examination of Andrew Giancamilli, James Krillenberger, and C. Grant Lyon. The objecting parties presented their case through cross-examination.

## THE PARTIES

The debtors are Snyders Drug Stores, Inc., Western Drug, and Drug Emporium and its subsidiaries. At the time of filing, they owned and operated 152 retail drug stores in 11 states. The debtors quickly closed a number of stores that were losing money. As part of this effort, they rejected certain unexpired leases of nonresidential real property and personal property. Those landlords and lessors have unsecured claims for the damages resulting from the lease rejections (collectively, the Landlord Claims). The present dispute is over the manner in which the Landlord Claims are treated in the proposed plan.

## OVERVIEW OF THE PROPOSED REORGANIZATION

The plan proposes to reorganize the debtors by de-leveraging debt and creating a streamlined retail operation that will preserve hundreds of jobs. There are two major components to the plan:[3] (1) Katz Holdings (Minnesota), Inc. (the Acquirer)[4] will make a capital contribution and receive 100% of the equity in the reorganized debtor; and (2) secured creditor McKesson Corporation[5] will make concessions in favor of two junior classes. Specifically, McKesson has agreed to allow some of the money that it believes would otherwise be paid on its secured claim to instead be set aside and paid to two junior classes of unsecured creditors: (1) those with reclamation claims (class 4); and (2) a class

made up primarily but not exclusively of trade creditors with whom the reorganized debtor hopes to do business after the reorganization (class 10). The remaining creditors in class 10 are service providers and lessors of stores that the reorganized debtor intends to continue to operate. The Landlord Claims are in a separate class (class 12).

Class 4 is to receive a distribution of about 27%. Class 10 is to receive $3,750,000.00 in cash plus any excess from a Reclamation Fund, as defined in the plan, together with recoveries from preserved litigation claims, including avoidance actions.[6] This distribution is estimated at 6–7%. Class 12 is to receive nothing.

Eight impaired classes voted to accept the plan and class 12 is deemed to have rejected it. *See* 11 U.S.C. § 1126(g).

■ The debtors and the committee, as the plan proponents, have the burden of proving that the plan meets the requirements for confirmation. *See, for example, In re Byrd Foods, Inc.,* 253 B.R. 196, 199 (Bankr.E.D.Va.2000).

## DISCUSSION

### *The Classification of Unsecured Claims under 11 U.S.C. § 1122(a)*

#### I.

The objecting creditors argue that the class 4, 10, and 12 claims are, at heart,

---

3. The proposed transaction is far more complicated. This description is limited to the facts necessary to decide the matter before the court.

4. The Acquirer is an insider within the meaning of 11 U.S.C. § 101(31).

5. McKesson, which is not an insider, will receive warrants to purchase 12.5% of the reorganized debtor's common stock in exchange for existing debt.

6. The class 4 distribution will come from a $500,000.00 Reclamation Fund. Plan ¶¶ 1.103, 1.104. The class 10 distribution will come from a Class 10 Fund, as defined in the plan, consisting of $3,750,000.00 plus any excess from the Reclamation Fund. Plan ¶ 1.24. Class 10 creditors will receive a distribution from the Class 10 Fund, together with "all recoveries from Preserved Litigation Claims (including Avoidance Actions), if any...." Plan ¶ 5.10(b).

simply unsecured claims that should be classified together in the plan. The plan proponents counter that the bankruptcy code permits them to separately classify these claims. *See* 11 U.S.C. § 1122(a). They contend that Sixth Circuit precedent allows such classification where the debtors have a sound business justification. On this point, they offer these justifications: the class 4 reclamation creditors have a colorable argument that they are entitled to be paid even if the estate assets are fully encumbered because the law in this circuit is unsettled as to the effect of a secured party's lien on an otherwise valid reclamation claim;[7] the trade vendors in class 10 are needed for the future operations of the reorganized debtor; and the class 12 landlords are not needed for the reorganization. The proponents also rely on the fact that the landlords have the potential (and the obligation) to mitigate their losses by re-letting the released space, while the trade creditors do not have that option. Finally, they argue that they have not engaged in impermissible gerrymandering of classes because other impaired classes were expected to, and did, vote in favor of the plan.

## II.

■ Section 1122 governs the classification of claims. That section provides in relevant part that a plan "may place a claim ... in a particular class only if such claim ... is substantially similar to the other claims ... of such class." 11 U.S.C. § 1122(a). This section "only addresses the problem of dissimilar claims being included in the same class." *Teamsters Nat'l Freight Indus. Negotiating Comm. v. U.S. Truck Co. (In re U.S. Truck, Co.)*, 800 F.2d 581, 585 (6th Cir.1986). "Section

1122(a) does not demand that all similar claims be in the same class." *Class Five Nev. Claimants v. Dow Corning Corp. (In re Dow Corning Corp.)*, 280 F.3d 648, 661 (6th Cir.2002). As a result, bankruptcy courts have broad discretion to determine classifications. *Id.*

■ The court's discretion is not, however, unlimited. A debtor may not classify similar claims differently solely to gerrymander an affirmative vote on a plan. *Boston Post Road Ltd. P'shp v. Federal Deposit Ins. Corp. (In re Boston Post Road Ltd. P'shp)*, 21 F.3d 477, 483 (2d Cir.1994); *Heartland Federal Sav. & Loan Ass'n v. Briscoe Enters. Ltd. II (In re Briscoe Enters., Ltd. II)*, 994 F.2d 1160, 1167 (5th Cir.1993). To justify a separate classification, the debtor must prove that there is a legitimate business reason supporting the classification. *Boston Post Road Ltd. P'shp*, 21 F.3d at 483. The need to maintain good will for future operations can be such a reason. *Briscoe Enters., Ltd. II*, 994 F.2d at 1167; *In re Bernhard Steiner Pianos USA, Inc.*, 292 B.R. 109, 114 (Bankr.N.D.Tex.2002).

■ The proponents have demonstrated a legitimate business reason for the separate classifications. At the hearing, the objectors did not really contest the separate classification of class 4 reclamation creditors, who have a sound legal argument that they are not unsecured creditors at all. The other two classes do not enjoy this potential for treatment other than as unsecured claims. Placing the reclamation claims in a separate classification is, therefore, based on a legitimate difference. The same is true for the class 10 creditors. The reorganized debtor intends to do business with some or most of these creditors,

---

**7.** *See, for example, In re Pittsburgh–Canfield Corp.*, 305 B.R. 688, 2003 WL 23272452 (Bankr.N.D.Ohio 2003); *In re Phar–Mor, Inc.*,

301 B.R. 482 (Bankr.N.D.Ohio 2003), both on appeal to the Bankruptcy Appellate Panel of the Sixth Circuit.

either in the near future or the long term. There is no similar potential for an ongoing relationship with the class 12 landlords. These differences support the plan classification. The plan does not, therefore, violate 11 U.S.C. § 1122(a).

### Discrimination against the Landlord Claims under 11 U.S.C. § 1129

#### I.

The objecting creditors contend that even if their claims can be classified separately, the plan cannot be confirmed because it unfairly discriminates against them by paying them nothing when other unsecured creditors will receive a distribution. The plan proponents respond that the property being distributed to classes 4 and 10 is not property of the estate and can, therefore, be distributed in any fashion they wish without regard to the bankruptcy code. Alternatively, they argue that if it is property of the estate, there is no unfair discrimination because there is a rational basis for the discrimination. The basis they put forward is that the trade creditors have value to the reorganized debtor because they are part of the future of the reorganized debtor and it is important to preserve their goodwill. With respect to the reclamation claims, the proponents state that the proposed distribution represents a settlement of the dispute over the status of these claims in this circuit. *See footnote 7.* Overall, the proponents emphasize that in a liquidation the unsecured creditors would receive nothing. And even in this reorganization, the class 4 and class 10 unsecured creditors would not receive a distribution but for the concessions made by McKesson and the contributions of the Acquirer.

#### II.

■ The preliminary question is whether the proposed distribution comes from property of the estates. In a word, yes. The distribution specifically includes recoveries from preserved litigation claims, including avoidance actions. This is property of the estates. *See* 11 U.S.C. § 541. The distribution must, therefore, be made in accordance with the bankruptcy code.

■ For a plan to be confirmed, the plan proponents must obtain creditor approval in one of two ways. The first possibility is that every impaired class accepts the plan. 11 U.S.C. § 1129(a)(8). Because class 12 will receive nothing under the plan, it is deemed to have rejected the plan. 11 U.S.C. § 1126(g). The proponents cannot, therefore, reach confirmation through this section. The alternative route to confirmation is that one impaired class accepts the plan and the requirements of § 1129(b) are met, known as the "cram down" provision. 11 U.S.C. § 1129(a)(10). Under § 1129, a plan can be confirmed even over the objection of an impaired class if the plan "does not discriminate unfairly ... and is fair and equitable, with respect to each class of claims" that is impaired and does not accept the plan. 11 U.S.C. § 1129(b)(1). Interestingly, the code does not prohibit all discrimination, it just prohibits *unfair* discrimination. *See In re Crosscreek Apartments, Ltd.,* 213 B.R. 521, 537 (Bankr.M.D.Tenn. 1997); *Creekstone Apartments Assoc, L.P. v. Resolution Trust Corp. (In re Creekstone Apartments Assoc., L.P.),* 168 B.R. 639, 644 (Bankr.M.D.Tenn.1994). The code does not define this term.

■ Everyone agrees that the plan discriminates against class 12. The question is whether the discrimination is unfair within the meaning of § 1129(b)(1). Courts in this circuit generally use a four-part test to determine if discrimination is "unfair":

(1) whether the discrimination is supported by a reasonable basis;

(2) whether the debtor can confirm and consummate a plan without the discrimination;

(3) whether the discrimination is proposed in good faith; and

(4) how the class that is being discriminated against is treated.

*In re Graphic Communications, Inc.*, 200 B.R. 143, 148 (Bankr.E.D.Mich.1996); *Creekstone Apartments Assoc., L.P.*, 168 B.R. at 644.

■■■ The first factor is whether there is a reasonable basis for the discrimination. "A plan may reasonably discriminate if the 'proposed discrimination protect[s] a relationship with specific creditors that the debtor need[s] to reorganize successfully'," *Graphic Communications, Inc.*, 200 B.R. at 148 (quoting *Creekstone Apartments Assoc., L.P.*, 168 B.R. at 644). The debtors and the committee argue that the reorganized debtor will need the good will of the class 10 trade creditors to succeed and that the desire to foster a good relationship with the trade creditors provides a reasonable basis for the varying treatment of class 10 and 12. They laid the foundation for this position through Andrew Giancamilli's [8] affidavit and testimony. That evidence established that there are different business dynamics between an enterprise and its trade creditors compared to an enterprise and its landlords or lessors. In general, the trade vendor connection is ongoing and relationship driven, with the enterprise negotiating for new products and lines, promotions, and favorable trade terms. The landlord relationship, on the other hand, is market driven and essentially static.

■■■ The testimony did not, however, go far enough to prove that the general propositions discussed above justify discrimination in this particular case. Several things weigh against the explanation provided for the proposed discrimination. First, class 10 is not solely made up of trade vendors. Instead, the class of nearly 2569 creditors includes: (1) trade vendors; (2) service providers; and (3) lessors of stores which the reorganized debtor will continue to operate. There was no evidence to support the preferential treatment afforded to the lessors included in class 10. Second, there was no evidence to prove that the trade and service creditors included in class 10 would refuse to deal with the reorganized debtor on acceptable terms going forward absent some preferential payment under the plan. Class 10 is not, therefore, reasonably tailored to foster only those relationships that are critical to the success of the reorganized debtor.[9] The plan proponents did not prove that there was a reasonable basis for the discrimination.

The second factor is whether the debtors can confirm and consummate a plan without the discrimination. The debtors and the committee failed to establish this factor. Mr. Giancamilli's declaration merely states that unsecured creditors would receive nothing but for the concessions made by McKesson and the Acquirer and notes that the Acquirer and McKesson have both voted in support of the plan. The testimony (as opposed to argument) did not substantiate that McKesson and the Acquirer were unwilling to make concessions unless the disputed money went solely to trade creditors. Counsel for the

---

8. Mr. Giancamilli is the debtors' chief restructuring officer. Before joining Snyders, he served as president and CEO of K–Mart and Perry Drug Stores. He is also a registered pharmacist.

9. There was testimony that it would be quite time-consuming to narrow the class 10 creditors further. This may well be true, but it is the plan proponents' burden to do so.

debtors described this as a 3% issue, stating that a 3% plan payment would result if the plan pooled all unsecured debt and paid it from the same fund.[10]  There was no evidence that a plan of that type could not be confirmed.  While the notion that 3% can make the difference between a plan being confirmed and a plan failing is troubling in the abstract, the creditors here are entitled to invoke the protections given to them by the code.

The third factor is whether the discrimination is proposed in good faith.  The analysis is whether the discrimination primarily benefits the debtor, without a corresponding benefit to the creditors.  *Creekstone Apartments Assoc., L.P.*, 168 B.R. at 645.  Because the proposed discrimination is not solely for the debtors' benefit and is intended to foster the ongoing business, the treatment of class 12 meets this part of the test.

The fourth factor requires looking at the treatment afforded to the class being discriminated against.  This factor focuses on "whether there is a meaningful recovery for creditors disadvantaged by the discrimination."  *Id.* (quoting *In re Aztec Co.*, 107 B.R. 585, 591 (Bankr. M.D.Tenn.1989)).  As the class 12 landlords will not receive any distribution, the plan does not offer them a meaningful recovery.

The plan proponents have not met their burden of proving that the plan meets the requirements of § 1129(b)(1).[11]  Consequently, confirmation is denied.

---

**10.** This calculation apparently includes the class 11 Other Acquirer Claims.

**11.** The plan proponents' reliance on *Official Creditors' Comm. v. Stern (In re SPM Mfg. Corp.*, 984 F.2d 1305 (1st Cir.1993)), is misplaced.  The agreement at issue there was not

### *The Remaining Objections*

The objecting creditors argue that the plan includes exculpation and release provisions which are not appropriate and that the plan should not be confirmed because it violates the absolute priority rule.  One creditor also contends that the entire plan was filed in bad faith.  Additionally, counsel advised the court at the hearing that there was an error in the ballots sent to some class 12 creditors.  As confirmation has been denied on other grounds, it is not necessary to address these objections.

### *CONCLUSION*

For the reasons stated, confirmation of the joint second amended plan is denied.  A separate order will be entered reflecting this decision.

proposed as part of the plan of reorganization, but was instead in the nature of a partial assignment or subordination agreement that was not subject to the code's confirmation requirements.  Also, the property to be distributed was not property of the estate.