In re **ASHGROVE APARTMENTS OF DeKALB COUNTY, LTD.**

In re **SHANNON WOODS APARTMENTS OF UNION CITY, LTD., Debtors.**

**Bankruptcy Nos. 2–89–06843, 2–89–06845.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Sept. 28, 1990.

**754**

Robert J. Bahal, Crabbe, Brown, Jones, Potts & Schmidt, Columbus, Ohio for Ashgrove Apartments of DeKalb County, Ltd.

Dean S. Cooper, Associate Gen. Counsel, Richard J. Martin, Reston, Va., Joseph C. Winner, McFadden and Winner, Columbus, Ohio, for Federal Home Loan Mortg. Corp.

Victor S. Krupman, Columbus, Ohio, for Shannon Woods Apartments of Union City, Ltd.

Jay Alix, Southfield, Mich., Chapter 11 Trustee.

Michael L. Cook, Sally M. Henry, Skadden, Arps, Slate, Meagher & Flom, New York City, Gen. Counsel to the Trustee.

Marilyn Shea–Stonum, Jones, Day, Reavis & Pogue, Columbus, Ohio, Sp. Counsel to the Trustee.

Charles M. Caldwell, Asst. U.S. Trustee, Columbus, Ohio Columbus Office of the United States Trustee for Region IX.

Lori Lapin Jones, Dewey, Ballantine, Bushby, Palmer & Wood, New York City, Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, Ohio, for the Official Committee of Unsecured Creditors of Cardinal Industries, Inc.

P. Steven Kratsch, Kilpatrick & Cody, Atlanta, Ga., for the Official Committee of Unsecured Creditors of Cardinal Industries of Florida, Inc.

Harvey S. Minton, Minton & Leslie, Columbus, Ohio, for Cardinal Industries of Georgia, Inc., Cardinal Industries Mortg. Co. and Cardinal Parts Service Co.

Charles J. Taunt, Birmingham, Mich., for Cardinal Industries Services Corp., Cardinal Industries of Florida Services Corp., Cardinal Industries of Georgia Services Corp., and Cardinal Furniture Leasing Co.

Thomas R. Noland, Altick & Corwin, Dayton, Ohio for Cardinal Partnership Corp. and Cardinal Partner Corp.

Gary H. Cunningham, Schlussel, Lifton, Simon, Rands, Galvin & Jackier, Southfield, Mich., for Cardinal Lodging Group, Inc. and Cardinal Apartment Management Group, Inc.

Sara J. Daneman, Chester, Hoffman, Willcox & Saxbe, Columbus, Ohio, for Cardinal Industries Development Corp.

## OPINION AND ORDER ON MOTIONS FOR RECONSIDERATION

BARBARA J. SELLERS, Bankruptcy Judge.

This matter is before the Court upon motions filed by Chapter 11 debtors, Ashgrove Apartments of DeKalb County, Ltd. ("Ashgrove") and Shannon Woods Apartments of Union City, Ltd. ("Shannon Woods"), seeking reconsideration of this Court's Opinion and Order entered August 13, 1990 which granted Federal Home Loan Mortgage Corporation ("FHLMC") relief from the automatic stay imposed by 11 U.S.C. § 362(a) in each case. FHLMC opposed the motions and the Court heard arguments and took limited evidence in this matter on September 21, 1990.

This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding which this bankruptcy judge may hear and determine under 28 U.S.C. § 157(b)(2)(G). The following constitute findings of fact and conclusions of law. For reasons set forth in this opinion the decision of August 13 will stand with regard to Shannon Woods but will be altered in Ashgrove's case.

### I. PROCEDURAL HISTORY

Following an evidentiary hearing FHLMC was granted relief from stay to proceed against properties owned by Ashgrove and Shannon Woods. This Court determined that while FHLMC was not entitled to relief pursuant to 11 U.S.C. § 362(d)(1), FHLMC had established both requirements for relief from stay under § 362(d)(2). Finding that each debtor lacked equity in its property, this Court then further determined that neither prop-

erty was necessary for an effective reorganization. Following that decision, the debtor in each case filed a Motion for Reconsideration which is now before this Court.

## II. THE PROPERTIES

Ashgrove, a limited partnership, owns and operates an apartment complex in De-Kalb County, Georgia (the "Property"). On December 12, 1986, Ashgrove executed a Multifamily Note in the amount of $2,400,000 payable to Southern Federal. This obligation was secured by a Multifamily Deed to Secure Debt, Assignment of Rents and Security Agreement. As additional security, Ashgrove executed an Assignment of Leases, Rents and Profits which grants a lien on the Ashgrove Property and all personal property located thereon or relating thereto, including but not limited to, all rental income from its Property. Subsequently, Southern Federal assigned its rights in these instruments to FHLMC.

Shannon Woods, a limited partnership, owns and operates an apartment complex in Union City, Georgia. On December 12, 1986, Shannon Woods executed a Multifamily Note in the amount of $1,529,000 payable to Southern Federal. This obligation was secured by a Multifamily Deed to Secure Debt, Assignment of Rent and Security Agreement. As additional security, Shannon Woods executed an Assignment of Leases, Rents and Profits which grants a lien on the Shannon Woods Property and all personal property located thereon or therein, including but not limited to, all rental income from its Property. Subsequently, Southern Federal assigned its rights in these instruments to FHLMC.

## III. ISSUES PRESENTED

1. In granting FHLMC relief from stay in each of these cases, did the Court use the appropriate standard and analysis for determining whether the Property was necessary for an effective reorganization?
2. Does the purported additional evidence set forth by each debtor require a different conclusion by this Court?

## IV. DISCUSSION OF THE LEGAL PRINCIPLES

A. *The Standard for Relief Under 11 U.S.C. § 362(d)(2).*

The debtors focus in their respective motions to reconsider upon this Court's determination whether the property in each case is necessary for an effective reorganization. Because the debtors do not take issue with the Court's finding that each property lacks equity, the Court will not address that issue again. Accordingly, the discussion begins with a finding, consistent with this Court's prior determination, that each debtor lacks equity in the respective property.

Pursuant to 11 U.S.C. § 362(d)(2) following a determination that a debtor lacks equity in the property, in order to grant relief from the automatic stay, the Court must further determine that the debtors have failed to show that "such property is necessary to an effective reorganization." These debtors contend that this Court overly restricted itself to a mathematical equation to determine that the properties were not necessary for an effective reorganization.

In *In re Willowood East Apartments of Indianapolis II, Ltd.,* 113 B.R. 392 (Bankr. S.D.Ohio 1990), this Court stated that the appropriate test to be utilized under § 362(d)(2)(B) involves more than a simple litmus test of whether the debtor can service its mortgage debt under the contract. This Court followed the United States Supreme Court's reasoning in *United Savings Assoc. of Texas v. Timbers of Inwood Forest Assoc., Ltd.,* 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988). As reasoned by the *Timbers'* court, § 362(d)(2)(B) should be interpreted as follows:

> Once the movant under § 362(d)(2) establishes that he is an undersecured creditor, it is the burden of the *debtor* to establish that the collateral at issue is "necessary to an effective reorganization." See § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganiza-

tion, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect.* This means, as many lower courts, including the en banc court in this case, have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time." [*In re Timbers of Inwood Forest Associates, Ltd.*] 808 F.2d [363] at 370–371, and nn. 12–13, (1987), and cases cited therein.... And while the bankruptcy courts demand less detailed showings during the four months in which the debtor is given the exclusive right to put together a plan, see 11 U.S.C. §§ 1121(b), (c)(2), even within that period lack of any realistic prospect of effective reorganization will require § 362(d)(2) relief. (footnotes omitted) (emphasis in original)

484 U.S. at 375–376, 108 S.Ct. at 632.

The *Timbers'* court, albeit in dicta, set forth the same two-part test that this Court has followed: (1) there must be a showing of a reasonable possibility of a successful reorganization and (2) this showing must come within a reasonable time. *See Willowood,* 113 B.R. at 392 and *In re Planned Systems, Inc.,* 78 B.R. 852 (S.D.Ohio 1987).

Both the *Timbers* decision and the *Planned Systems* decision acknowledge the need for a balancing test in this area. Requiring the debtor to establish a "reasonable possibility of a successful reorganization within a reasonable time," has different meanings depending on the stage of the proceeding. Debtors should be given a full opportunity to work under the Bankruptcy Code toward a successful reorganization. *Planned Systems* at 866. However, at the same time, debtors must be realistic. Debtors must make some showing that successful reorganization is possible. As stated by one court: "The court should not, at the conclusion of the debtor's case, be left to speculate about important elements and issues relating to the likelihood of an effective reorganization." *In re Anderson Oaks (Phase I) Limited Partnership,* 77 B.R. 108, 110 (Bankr.W.D.Texas 1987).

As reasoned by *Timbers, Willowood* and *Planned Systems,* in the initial stages of a Chapter 11 proceeding, the debtor should be granted significant leeway in attempting to establish that successful reorganization is a reasonable possibility. However, as the case progresses, so too does the debtor's burden of proving that successful reorganization may be reasonably expected. Even at the later stages, a motion for relief from stay should not be turned into a confirmation hearing; that is not the debtor's burden of proof. Rather, the test should be viewed as a continuum with the scales tipping in favor of the debtor in the early stages and the burden of proof becoming greater in the later stages. In other words, each case is different and must be viewed on its own with the facts of each case being fully considered.

■ Thus, in these limited partnership cases where the primary business is the operation of an income-generating property, and the reasonable possibility of a successful reorganization is contested by the primary secured lender, the debtor must at a minimum show that:

1. It is moving meaningfully to propose a plan of reorganization. The older or simpler a case or "iffier" the business is, the stronger that showing must be.

2. The proposed or contemplated plan has a realistic chance of being confirmed. This proposed or contemplated plan must provide that:

   (a) The lender's allowed secured claim can be realistically valued and paid over time, with a discount factor equal to a market rate of interest, from the debtor's net operating income generated by its property, or

   (b) Some other means of proposing a confirmable plan are realistically contemplated. These may include new capital contributions, sale to a third party or other options sanctioned by the Bankruptcy Code.

3. The proposed or contemplated plan is not patently unconfirmable. However, first impression or unsettled legal issues relating to confirmation disputes

will not be decided in the context of a relief from stay proceeding.

■ Furthermore, the Court must make a determination, based upon the facts of each case, whether this showing has come within a reasonable time. There can be no explicit holding as to what constitutes "reasonable time," but the following factors are relevant:

1. The length of time the case has been pending;

2. The presence or absence of pre-petition or post-petition negotiations among the parties;

3. The length of time the debtor has been in possession and operating its business;

4. The presence or absence of good faith efforts by the parties to negotiate a consensual solution to the case;

5. The level of cooperation from any recent state court appointed receiver in making available to the debtor records of the receiver's operations;

6. The length of time since the expiration of the exclusivity period;

7. Any other relevant legal factors.

This last item is an important element to be considered in the analysis. The list of factors is not intended to be all-inclusive nor will it limit this Court's examination. Rather, in the context of these Cardinal limited partnership property proceedings, it is intended merely as a guidepost for determining whether a showing of a reasonable possibility of a successful reorganization has been made within a reasonable time.

■ All of the evidence will be viewed in light of the principles enunciated in *Timbers*, 484 U.S. at 365, 108 S.Ct. at 626, *Willowood*, 113 B.R. at 392 and *Planned Systems*, 78 B.R. at 852. Above all, it must be remembered that this is a balancing test. Therefore, in the early stages of a Chapter 11 proceeding the debtor should be allowed greater latitude in making the required showing. However, in the later stages, the showing will necessarily need to be more precise. This sliding scale represents the requirement that a reasonable possibility of effective reorganization come within a reasonable time.

### B. The Standard for Relief in a Motion for Reconsideration.

■ Initially, the Court notes that these matters are before it on motions for reconsideration and that the standard which applies to such motions differs from the standard utilized in the August 13, 1990 opinion. Motions filed pursuant to Bankruptcy Rule 9023 and Federal Rule of Civil Procedure 59(e) are properly classified as motions for reconsideration. *Huff v. Metropolitan Life Ins. Co.*, 675 F.2d 119 (6th Cir.1982). The authority to grant or deny such motions rests solely in the sound discretion of the trial court. *Huff*, at 122 and *In re Cafferky*, 39 B.R. 330, 335 (Bankr.M.D.Tenn.1984). The *Cafferky* court further reasoned at 335 that "the court should grant the motion to correct manifest errors of fact or law or as vehicles to present newly discovered evidence." With these principles in mind, this Court turns to an analysis of each Property.

## V. APPLICATION OF THE LEGAL PRINCIPLES TO THESE PROPERTIES

### A. Shannon Woods.

■ During the hearing on the motion for reconsideration, Shannon Woods introduced evidence purporting to show that approximately $59,000 had been discovered which could be used to fund a plan of reorganization. Richard Brock, corporate director of investment management for Cardinal Industries, Inc. ("CII"), testified that this money came from subscription receivables from investor notes. It appears from the evidence and testimony that this amount was transferred to Shannon Woods' savings account in May 1988. However, the trail of this money grows faint at this point. Brock indicated that in January 1990 the account in which this money was located in Atlanta, Georgia was closed and at some time in late February 1990, it was deposited into an account at the Huntington National Bank ("HNB"). Eventually, in June 1990 the money was

placed into a debtor-in-possession ("DIP") account also at HNB. The evidence was both scant and sketchy as to what was happening to this money during the interim between January 1990 and late February 1990.

The evidence is also unclear as to whether there are any outstanding claims against this money or whether Shannon Woods holds it only for application to its own uses. Paul Jarvis, president of CII, testified that after reviewing the records, it did not appear that there were any claims against the money. While the absence of such records may sometimes be an indication that none exist, in this case, where there has been a great deal of evidence regarding the poor conditions of the accounting records, such an absence of records does not necessarily mean that none exist. The testimony of Jarvis and Brock support this conclusion.

This Court concludes that Shannon Woods' new evidence is not reliable enough, based upon the circumstances of this case, to warrant this Court's reconsideration of the August 13, 1990 order. It is not entirely clear from the evidence as to where this money came from and why it was not available at the original hearing. With such scant evidence, this Court will not assume that the money can be used to fund the debtor's plan of reorganization.

Furthermore, no plan was filed by Shannon Woods prior to the issuance of the August 13, 1990 order, and in fact no plan was filed until August 31, 1990. As of the date of the hearing on these motions, no disclosure statement had been filed. With respect to this debtor, nothing significant has changed since this Court's opinion on August 13, 1990.

While this Court's original opinion with regard to Shannon Woods could have been more thoroughly explicit, the test used to determine if FHLMC was entitled to relief from stay was essentially no different then the one set forth in this opinion. This is an older case, with significant pre-petition activity, where the cash flow analyses are somewhat problematic. Therefore, the debtor's showing must be somewhat stronger. Shannon Woods did not suffi-ciently demonstrate to this Court at the initial hearing on the relief from stay motion that it was moving meaningfully to propose a plan of reorganization which could work. Shannon Woods did not demonstrate at that initial hearing that this secured lender's claim could be paid over time from the net operating income of the property or that new capital or other means of reorganization were realistically contemplated.

As stated in the August 13, 1990 opinion, what Shannon Woods proposed at the initial hearing was too little, too late. Furthermore, the alleged newly discovered evidence does not, to this Court's satisfaction, warrant alteration of the original result. Therefore, Shannon Woods' motion to reconsider is denied and the grant of relief from stay to FHLMC remains.

### B. *Ashgrove.*

After further review of the evidence, the Court concludes that it may have taken an oversimplified approach to its analysis of Ashgrove's ability to have a reasonable possibility of effective reorganization within a reasonable time. Ashgrove had proposed a plan and had filed its first disclosure statement by the time of the initial hearing on FHLMC's motion for relief from stay. In addition to Ashgrove's proposed financial analyses, this Court had FHLMC's analyses before it. When one party's net operating income was used for valuing FHLMC's secured claim and the other party's net operating income was used for determining if Ashgrove could propose a workable plan of reorganization, an inconsistent outcome resulted. Recognizing the discrepancy, in future cases and in this motion for reconsideration only one party's net operating income will be used for all calculations. Which net operating income is used will depend on the evidence presented at the hearing.

With respect to Ashgrove, a plan of reorganization along with the first disclosure statement was filed on July 6, 1990, pursuant to an agreed extension of the exclusivity period to that date. Under the proposed plan Ashgrove proposed to use

the post-petition pre-confirmation rents already paid to FHLMC to partially fund its plan. Whether this will be permitted has yet to be determined and, as stated previously, such an issue, which is one of first impression or of unsettled law will not be determined at this stage of the proceeding. Unless proposals in the plan make it patently unconfirmable, such determinations will be left for the confirmation hearing.

Assuming, without deciding, that Ashgrove would prevail on this issue at confirmation and because the proposal is not patently illegal, this Court acknowledges that relief from stay was granted too hastily in this case. Ashgrove may be able to pay FHLMC's claim over time under the cram-down provisions of Chapter 11. In addition to using post-petition pre-confirmation rents, Ashgrove also proposes to pay interest only for the first two years of the plan. In more carefully examining the totality of Ashgrove's proposed plan, and considering the stage of this case, the Court finds that its previous finding that Ashgrove had failed to show a reasonable possibility of a successful reorganization was in error.

At the hearing on the motion to reconsider, Ashgrove presented evidence purporting to establish that since the time of the initial hearing, approximately $17,500 had been located which could be used to fund the plan. However, for essentially the same reasons as those enunciated with respect to Shannon Woods, this Court is not convinced that the additional money is entirely available for debtor to use. Further, because of the determination that Ashgrove has made a showing of a reasonable possibility of an effective reorganization without the use of that money, such a finding does not prejudice the debtor.

Turning to the second prong of the test, it must next be determined whether Ashgrove's showing of a reasonable possibility of a successful reorganization has come within a reasonable time. As stated previously, each case is different and this Court will use the factors set forth above as guidelines only. Although this case has been pending a longer period of time than this Court would like, given the pre-petition history relating to this property, the plan was filed prior to the expiration of the agreed-upon extension of the exclusivity period. And while this case has seen a great deal of litigation, there has been no evidence of bad-faith.

Further, and most importantly, a hearing on Ashgrove's amended disclosure statement has been set for October 17, 1990. Ashgrove's plan process is therefore close enough to a confirmation hearing and determination that FHLMC's rights will not be unduly prejudiced by allowing the process to take the path contemplated by Chapter 11.

These factors, admittedly not considered by the Court in the initial opinion, lead to a very different conclusion for Ashgrove than for Shannon Woods. In Shannon Woods, no plan was before this Court and as of the date of the hearing of this matter, no disclosure statement had been filed. Further, Shannon Woods did not convince the Court that it could realistically pay FHLMC's allowed secured claim from its operating income and there was no evidence establishing that it was contemplating any other means of funding the then non-existent plan. In other words, the debtor in Shannon Woods left this Court to guess and speculate as to its ability to reorganize in a reasonable time. Very simply, that it was not enough. Ashgrove, however, gave this Court more concrete evidence with which to work.

CONCLUSION

Based upon the foregoing, the motion to reconsider of debtor Shannon Woods is denied and the grant of relief from stay as to FHLMC stands, consistent with this opinion and the August 13, 1990 order. However, debtor Ashgrove's motion to reconsider is granted and the relief from stay previously granted to FHLMC with respect to Ashgrove is vacated and now denied.

IT IS SO ORDERED.