**In re SNAPWOODS APARTMENTS OF DEKALB COUNTY, LTD., Debtor.**

**Bankruptcy No. 2–92–2717.**

United States Bankruptcy Court, S.D. Ohio, E.D.

Jan. 8, 1993.

Richard G. Hardy, Ulmer & Berne, Cleveland, OH, for debtor.

Joseph C. Winner, McFadden Winner and Savage, Columbus, OH, for Federal Home Loan Mortg. Corp.

James H. Bownas, Gen. Counsel, Cardinal Realty Services, Inc., Reynoldsburg, OH, Leon Friedberg, Benesch, Friedlander, Coplan & Aronoff, Columbus, OH, for Cardinal Realty Services, Inc.

Charles M. Caldwell, Columbus, OH, Asst. U.S. Trustee.

### MEMORANDUM OPINION ON MOTION FOR RELIEF FROM THE STAY

BARBARA J. SELLERS, Bankruptcy Judge.

Before the Court is a renewed motion for relief from the automatic stay pursuant to 11 U.S.C. § 362(d) filed by Federal Home

Loan Mortgage Corporation ("Freddie Mac"). The debtor, Snapwoods Apartments of Dekalb County, Ltd, ("Snapwoods") opposed this motion. Based upon the evidence presented at the hearing held December 14, 1992, the Court concludes that Freddie Mac is entitled to relief from the automatic stay under 11 U.S.C. § 362(d)(2).

The Court has jurisdiction in this matter under 28 U.S.C. § 1334(b) and the General Order of Reference entered in this district. This is a core proceeding under 28 U.S.C. § 157(b)(2)(G) which this bankruptcy judge may hear and determine.

## I. Procedural History and Facts

Snapwoods is one of approximately 300 limited partnerships operating under Chapter 11 before this Court in which Cardinal Realty Services Incorporated (fka Cardinal Industries Incorporated) ("Cardinal") or one of its affiliates is the general partner. Snapwoods owns real property in Dekalb County, Georgia (the "Property") on which an apartment complex has been constructed. Freddie Mac holds a note executed by Snapwoods the repayment of which is secured by a Multi–Family Deed to Secure Debt, Assignment of Rents, and Security Agreement against the Property. On April 6, 1992, Snapwoods filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

Freddie Mac first sought relief from the automatic stay on July 7, 1992. The Court denied the relief requested by Freddie Mac after hearing, but left the door open for Freddie Mac to renew its motion should Snapwoods fail to file a "realistic plan of reorganization on or before November 4, 1992". Snapwoods had not filed any plan of reorganization by November 4, 1992 and consequently, Freddie Mac renewed its motion for relief. On December 14, 1992, immediately prior to the latest hearing, Snapwoods filed a plan of reorganization and disclosure statement.

## II. Conclusions of Law

To obtain relief from the automatic stay under 11 U.S.C. § 362(d)(2), the movant must establish that a debtor lacks equity in the property. 11 U.S.C. 362(g)(1). The burden then shifts to the debtor to show that the property is necessary for an effective reorganization. 11 U.S.C. § 362(g)(2). Freddie Mac and Snapwoods stipulated at the hearing that Snapwoods has no equity in the Property. The burden thus shifts to Snapwoods to demonstrate that the Property is necessary for an effective reorganization.

This Court follows a two-prong test to determine whether a debtor has made this showing: (1) there must be showing of a reasonable possibility of a successful reorganization and (2) this showing must come within a reasonable time. See, *In re Ashgrove Apartments of Dekalb County, Ltd.*, 121 B.R. 752, 756 (Bankr.S.D.Ohio 1990) and *United Savings Association of Texas v. Timbers of Inwood Forest Association Ltd.*, 484 U.S. 365, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988).

In *Ashgrove* and other Cardinal related partnership cases the Court has required a debtor to establish that it is "moving meaningfully" toward a realistic plan of reorganization. A focal point in these cases generally has been whether the debtor has proposed such a plan in a reasonable time. The longer the case has been pending the stronger that showing must be. See, *In re Northgate Terrace Apartments, Ltd.*, 126 B.R. 520, 525–526 (Bankr. S.D.Ohio 1991).[1]

Snapwoods has proposed a plan of reorganization within a reasonable time. Its voluntary petition for relief was filed on April 6, 1992 and its proposed plan was filed on December 14, 1992. In comparison

---

1. For an interesting analogy on the "reasonable time" element see *In the Matter of Holly's, Inc.*, 140 B.R. 643, 699 at fnt. 90 (Bankr.W.D.Michigan 1992). The court reasoned that this "sliding scale" of a debtor's burden of proof was analogous to trap shooting with clay pigeons, i.e. the further out the clay pigeon flies, the more accurate the aim of the shooter (plan proponent) must be. The Court also reasoned that in some cases the shooter (plan proponent) may never be able to hit the target.

with other Cardinal partnership cases that time frame is very reasonable. Freddie Mac did not seriously dispute that Snapwoods had met this prong of the test. Rather, Freddie Mac vigorously contended that the plan proposed by Snapwoods was not realistic and could not be confirmed over the objection of Freddie Mac. The Court agrees with this contention.

■ This Court consistently has held that the burden the debtor has under § 362(d)(2)(B) does not require it to demonstrate the confirmability of its plan. See, *Ashgrove*, 121 B.R. at 756–757 and *In re Northgate Terrace Apartments, Ltd.*, 126 B.R. 762, 766 (Bankr.S.D.Ohio 1991) ("Northgate Terrace II"). However, a debtor "must make some showing that successful reorganization is possible." *Ashgrove* 121 B.R. at 756. When the debtor completes its evidence, the court should not "be left to speculate about important elements and issues relating to the likelihood of an effective reorganization". *In re Anderson Oaks (Phase 1) Limited Partnership*, 77 B.R. 108, 110 (Bankr.W.D.Texas 1987).

Specifically, in *Ashgrove* this Court reasoned that a proposed or contemplated plan should provide that:

(a) The lender's allowed secured claim can be realistically valued and paid over time, with a discount factor equal to a market rate of interest, from the debtor's net operating income generated by its property, or

(b) some other means of proposing a confirmable plan are realistically contemplated. These may include new capital contributions, sale to a third party or other options sanctioned by the Bankruptcy Code.

121 B.R. at 756.

The key to this analysis is the "reasonableness" and realistic nature of any proposed plan. The proposed payments under Snapwoods' plan are derived from its projected net operating income over the next ten years. That net operating income is in turn derived from the projected income that the property will generate and the projected operating expenses it will incur.

The current monthly average net operating income for Snapwoods is considerably less than what it projects for 1993. Based upon the evidence adduced at the hearing the Court finds that these projections are neither reasonable or realistic.

The evidence established that Snapwoods has had problems maintaining consistency in its pass-through payments to Freddie Mac under an agreed cash collateral order. This is a good indication of potential problems with the projected plan payments. The monthly average of the pass-through payments, which is essentially Snapwoods' monthly net operating income, is significantly lower than the proposed plan payments to Freddie Mac. Further, the evidence presented by Snapwoods indicated that occupancy levels on the Property have been good all year. The Court seriously questions Snapwoods' ability to achieve the increased operating income required by the higher net operating income projected for 1993 and beyond because the Property already is operating at a high level of occupancy.

Freddie Mac contended at the hearing that Snapwoods was "gambling" at Freddie Mac's cost that net operating income would increase enough to meet the proposed plan payments. The Court agrees with Freddie Mac that this debtor has little likelihood of meeting its optimistic projections. Without achieving the projected increase in net operating income, however, the likelihood of a successful reorganization for Snapwoods is slim. The Court finds it more likely that Snapwoods will continue at the same or only slightly higher level of operations. If that is the case, Snapwoods would have less than $200 a month remaining after plan payments to establish necessary reserves. This is a ten year old apartment complex and it is unreasonable to assume that major maintenance will not be needed. Without adequate reserves, Snapwoods' likelihood of a successful reorganization diminishes further.

It would be pure speculation to assume that Snapwoods can realistically meet its projected net operating income in the years to come. Net operating income is critically

important because it drives the success or failure of Snapwoods' plan of reorganization. Snapwoods, however, has not demonstrated that its projected net operating income is reasonable or reliable given its recent past experience. It follows that Snapwoods has not established that its proposed plan of reorganization has any likelihood of success. Therefore, Snapwoods has not met its burden under 11 U.S.C. § 362(d)(2)(B) to establish that a "successful reorganization" is possible.

### III. Conclusion

In *Ashgrove*, this Court set forth certain standards to be applied in the context of a relief from stay motion filed by a secured lender in a Cardinal partnership case. The majority of those opinions, however, established only when it was inappropriate to grant relief from the automatic stay. The limits on the other end of the continuum are equally important.

Under the standards enunciated in *Ashgrove* and its progeny the Court finds Snapwoods has failed to demonstrate the possibility of a successful reorganization. The numbers simply do not add up because the projections are unrealistic. Accordingly, the Court finds that Freddie Mac is entitled to relief from the provisions of the automatic stay under 11 U.S.C. § 362(d)(2).

IT IS SO ORDERED.