**In the Matter of BRIAN WISE TRUCKING, INC., Debtor.**

No. 07–40278.

United States Bankruptcy Court,
N.D. Indiana,
Fort Wayne Division.

Feb. 27, 2008.

David A. Rosenthal, Lafayette, IN, for Debtor.

Gordon Gouveia, II, Shaw Gussis Fishman Glantz Wolfson & Towbin, LLC, Chicago, IL, for Tennessee Commerce Bank.

Robin Tubesing, Office of the United States Trustee, South Bend, IN, for U.S. Trustee.

### DECISION

ROBERT E. GRANT, Bankruptcy Judge.

This matter is before the court following trial of the issues raised by Tennessee Commerce Bank's motion for relief from the automatic stay in this chapter 11 case. As originally filed, the motion was premised only upon § 362(d)(1) of the United States Bankruptcy Code and sought relief from the automatic stay solely due to the lack of adequate protection. Between the date of filing and the date of trial, the motion somehow morphed into something else, so that at trial the Bank was seeking relief from the automatic stay under both portions of § 362(d). Not only was it claiming that it lacked adequate protection, but also that its collateral was not necessary to an effective reorganization.

At the conclusion of trial the court made partial findings of fact and conclusions of law. It also ordered the debtor to commence making payments, in the sum of $682 per month, in order to protect the Bank from the depreciation its collateral—a 2004 Peterbilt tractor—was experiencing. The court found that the tractor was "necessary" to an effective reorganization, in the sense that it would make a positive contribution to the debtor's reorganization efforts. It then gave the parties the opportunity to submit legal briefs on two particular issues: when adequate protection payments should begin and the nature or extent of the debtor's burden of proof concerning the possibility of a successful reorganization. The parties have done so and those issues are the primary focus of this decision, which supplements the findings and conclusions previously announced in open court.

■ Section 362(d) of the United States Bankruptcy Code authorizes the court to terminate, condition, or modify the automatic stay "for cause, including the lack of adequate protection" or when "the debtor does not have equity in ... property [which] is not necessary to an effective reorganization." 11 U.S.C. § 362(d)(1),

(2). Whether and to what extent it may do so are matters committed to the court's discretion. *In re Williams,* 144 F.3d 544, 546 (7th Cir.1998).

■■■ The two prongs of § 362(d) are independent of one another. As a result, even the most adequately protected creditor can still seek relief from the automatic stay based upon the proposition that there is no equity in its collateral and the property is not necessary to an effective reorganization. Similarly, no matter how necessary the collateral might be to the debtor's reorganization efforts, if a secured creditor is not adequately protected, it is still entitled to seek relief from the automatic stay. Such a result is not surprising when one remembers that § 362(d)(1) and § 362(d)(2) serve entirely different purposes. The purpose of § 362(d)(1) is to ensure that a secured creditor is not harmed while the debtor attempts to reorganize its affairs. Section 362(d)(2), on the other hand, is designed to test whether the debtor is making sufficient progress towards a sufficiently realistic goal so that its efforts should be allowed to proceed.

■■■ The first issue—when the debtor's adequate protection payments should begin—is the easiest to answer. The Bank argues that it should be compensated for any depreciation its collateral experiences at least from the date its motion was filed, if not from the earlier date of the petition itself. The first argument was the position Judge Rodibaugh adopted years ago in *Matter of Wilson,* 70 B.R. 46, 48 (Bankr.N.D.Ind.1987)("adequate protection under 361[d](1), is to cover depreciation of collateral from the date the motion seeking adequate protection is filed") and neither the debtor nor the movant have given the court any reason to depart from that standard.

At the conclusion of trial, the court ordered the debtor to pay the Bank the sum of $682 on or before November 16, 2007, and a like amount on the first date of each month thereafter. Order dated Nov. 14, 2007. Those payments are sufficient to compensate the Bank for the decline in the value of its collateral from November 2007, onward. Yet, the Bank's motion was filed on June 27, 2007. As a result, in accordance with *Wilson,* it remains necessary to compensate the Bank for the roughly four months of depreciation its collateral experienced between the date the motion was filed, June 27, 2007, and the date of trial, November 6, 2007, when the court ordered payments to begin. At the rate of $682 per month this will require a payment of $2,728 ($682 × 4 = $2,728), in addition to those required by the order of November 14.

■■■ The fact that the Bank is adequately protected does not end the court's inquiry. It must still determine whether the debtor has successfully demonstrated that the Bank's collateral "is necessary to an effective reorganization." [1] This requires the court to be able to find, in the words of the Supreme Court, that there is "a reasonable possibility of a successful reorganization within a reasonable time." *United Sav. Ass'n of Texas v. Timbers of Inwood Forest Associates, Ltd.,* 484 U.S. 365, 376, 108 S.Ct. 626, 633, 98 L.Ed.2d 740 (1988). Courts, including this one, have often struggled to articulate this standard with greater clarity and to de-

---

**1.** Section 362(g) of the Bankruptcy Code allocates the burden of proof in proceedings concerning relief from stay. 11 U.S.C. § 362(g)(1), (2). The movant bears the burden of proving the lack of equity in property— a fact that has been stipulated to—and the party opposing the motion—in this instance the debtor—bears the burden of proof on all other issues.

scribe precisely what must be done in order to fulfill it; yet, beyond the recognition that the issue is "measured on a sliding scale," *In re Grand Sports, Inc.*, 86 B.R. 971, 974 (Bankr.N.D.Ind.1988), and is "a moving target," *Matter of Holly's Inc.*, 140 B.R. 643, 699 (Bankr.W.D.Mich.1992), that "has different meanings depending on the stage of the proceeding," *In re Ashgrove Apartments of DeKalb County*, 121 B.R. 752, 756 (Bankr.S.D.Ohio 1990), so that "the older the case, the better it has to look," *In re Eisentrager*, 102 B.R. 181, 182 (Bankr.W.D.Mo.1989), those efforts have not met with much success. This is largely because every chapter 11 case is unique and the inquiry as to the possibility that the debtor can be successfully reorganized within a reasonable amount of time is highly fact-sensitive and can only be made on a case-by-case basis. *Holly's*, 140 B.R. at 700. It involves not just the age of the case but also what the debtor needs to do in order to accomplish its reorganizational goals and the progress that has been made towards them.

■ Some reorganizations might be relatively simple, requiring nothing more than restructuring debts to creditors in order to overcome temporary cash flow problems. Others will be more complicated and can involve identifying and closing down unprofitable lines of business, in order to focus on more profitable operations, renegotiating contracts, seeking third party financing, and negotiating with large numbers of creditors. Thus, depending upon the debtor and what it needs to do in order to reorganize its affairs, a successful reorganization can, quite reasonably, be a matter of only a few months, or several years, or anywhere in between. In other words, as much as one might like to be able to lay out precise road maps and timetables which say that by a particular point in time, a debtor must be able to

demonstrate thus and so with a particular degree of precision, it is not possible to do so. Instead, what § 362(d)(2) calls for is much more of a discretionary inquiry, rather than a mechanical one, which, at bottom, requires the court to make a judgment call as to whether the debtor is making sufficient progress towards a sufficiently realistic goal such that its efforts should be allowed to continue.

The Bank points to *Matter of Holly's, Inc.*, 140 B.R. 643 (Bankr.W.D.Mich.1992), and urges the court to follow its approach towards the debtor's burden of proof under § 362(d)(2). *Holly's* characterizes the nature of that changing burden as requiring the debtor to prove that a successful reorganization is plausible, probable, or assured based upon the age of the case and the debtor's exclusive opportunity to file a plan. *Holly's*, 140 B.R. at 700–02. At the same time, *Holly's* also cautions against the temptation to transform an inquiry under § 362(d)(2) into a full blown fight over whether or not a plan can be confirmed. *Holly's*, 140 B.R. at 699 n. 89, 700 n. 91. *See also, Grand Sports*, 86 B.R. at 974. Instead, the inquiry's proper "focus is, relative to the date of filing, whether the debtor is moving meaningfully to propose a plan which … may be confirmable." *Holly's*, 140 B.R. at 700 n. 91. This requires the court to balance the delay being borne by creditors against the debtor's ability to formulate a plan. *Holly's*, 140 B.R. at 702.

■ To the extent that *Holly's* uses the terms plausible, probable, or assured as an attempt to describe the increasing burden a debtor bears under § 362(d)(2), the court embraces and even applauds the effort. Those terms are useful and do help to clarify the changing nature of that burden; nonetheless, *Holly's* should not be interpreted mechanically or as establishing immovable points on a reorganizational

timeline, based upon whether the exclusivity period has expired or the proximity of a hearing to consider confirmation of a plan. The decision itself acknowledges that they are only *"rough categories,"* which were being used "as [a] methodology to analyze ... the application of the changing burden of proof" and that it may be "impossible to categorize a case." *Holly's*, 140 B.R. at 700–01 n. 91 (emphasis original). As a result, the court reads *Holly's* as using the terms plausible, probable and assured illustratively, rather than mechanically. They offer convenient ways to describe the increasing nature of the debtor's burden and point to readily identifiable moments in time as examples of when more might be expected of a debtor. The court does not, however, read *Holly's* as holding that the moment the exclusivity period expires the weight of the debtor's burden automatically jumps from plausible to probable or that once a plan has been filed the debtor is now required to prove that confirmation is assured.

■■■ When the court tried the issues raised by the Bank's motion, the debtor still had the exclusive right to propose plan, yet that right would soon to expire.[2] This is the most nebulous category of cases under § 362(d)(2). *Holly's*, 140 B.R. at 701–02. As previously indicated, proving a reasonable possibility for a successful reorganization within a reasonable time is a test of the debtor's vision for its future. It requires the debtor to share that vision, so that the court can make an assessment of whether it is sufficiently realistic and whether the debtor is making sufficient progress towards its goal so that it should be allowed to continue with those efforts.

In this instance, reorganization requires more than just restructuring the way in which the debtor will pay its creditors. Instead, the keystone of reorganization appears to be changing the focus of the debtor's business, by moving it away from long haul trucking to shorter, more local hauling, which the debtor sees as a more profitable area for its small trucking business. Furthermore, the debtor appears to have actually made, if not completed, that transition. As a result, as of the date of trial, the court is satisfied that the debtor has a sufficiently clear vision of what reorganization will require and that it is making sufficient progress towards that goal. While there are reasons to be skeptical as to whether the debtor's redirected business operations will be more successful than its past endeavors, at the present time, the court is willing to give the debtor the benefit of the doubt and the opportunity to see if those efforts will bear fruit. In saying this, the court recognizes that the debtor did not come forward with a clear framework as to which creditors are going to be paid, how much or how often. In other words, it was not given the specific outline of a proposed plan. Yet, the debtor was not required to come forward with such a plan in order to successfully oppose the motion. It needed only to satisfy the court that it had "the tools necessary to formulate a plan" and that it was capable of producing one. *Holly's*, 140 B.R. at 702. Furthermore, doing so with any degree of specificity will require the debtor to know what resources it will be able to bring to a plan and its efforts to repay creditors.[3] In

---

**2.** The exclusivity period was originally scheduled to expire on the 27th day of September, but it was extended, at the debtor's request following notice to all creditors and the absence of any objection thereto, by the court's order of October 23, 2007.

**3.** This type of situation, where reorganization involves not just restructuring debt but also restructuring the debtor's business, often places the debtor on the horns of a dilemma when it comes to proving the possibility of a successful reorganization. If it comes for-

other words, the profitability of the debtor's redirected business will determine the structure of its forthcoming plan. If those efforts are wildly successful, one type of plan may well be the result. On the other hand, if they fail miserably, something else is likely to happen. Only time will tell and, at this stage of the proceedings, the court is willing to give the debtor that time.

An appropriate order will be entered.

ward with too a specific plan, before its restructuring efforts have had the opportunity to bear fruit, creditors contend that the effort is unrealistic and point to the debtor's past performance to bolster the argument. Yet, if the debtor does not come forward with a specific plan, creditors will just as readily complain that the debtor lacks a vision for the future and is simply camping out.