**Adalgisa MERCADO, Debtor.**

**Adalgisa Mercado, Appellant,**

v.

**Combined Investments, LLC, Appellee.**

**BAP No. 14–030.**

**Bankruptcy No. 12–10411–JNF.**

United States Bankruptcy Appellate Panel of the First Circuit.

Jan. 8, 2015.

Carmenelisa Perez–Kudzma, Esq., Weston, MA, on brief for Appellant.

James R. Simmons, Esq., Providence, RI, on brief for Appellee.

Before Deasy, Kornreich, and Finkle, United States Bankruptcy Appellate Panel Judges.

FINKLE, Bankruptcy Judge.

Adalgisa Mercado (the "Debtor") appeals from the bankruptcy court's order after remand granting Combined Investments, LLC ("CI") relief from the automatic stay pursuant to § 362(d)(2).[2] For the reasons set forth below, we **AFFIRM**.

## BACKGROUND

The Debtor and her husband jointly own three properties, one of which is the subject of this appeal (the "Property"). The Debtor rents the Property to various tenants. CI is the current holder of a note executed by the Debtor and her husband and secured by a mortgage on the Property and an assignment of rents.

---

**2.** Unless expressly stated otherwise, all references to "Bankruptcy Code" or to specific statutory sections shall be to the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

In January 2012, the Debtor filed a chapter 11 petition. On her Schedule D, the Debtor identified CI as a creditor holding a $434,146.00 claim secured by the Property. The Debtor valued the Property at $205,000.00. CI filed a secured proof of claim in the amount of $452,639.58.

On October 15, 2012, CI filed a motion seeking relief from the automatic stay under § 362(d)(1) and (d)(2).[3] CI contended, among other things, that it was entitled to relief from the stay under § 362(d)(1) for lack of adequate protection because the Debtor was not making post-petition mortgage payments, was not paying real estate taxes or water or sewer assessments, and had not filed a chapter 11 plan. CI's request for relief from the stay under § 362(d)(2) rested on the grounds that the Debtor had no equity in the Property and it was not necessary for an effective reorganization. CI asserted there was no good faith basis to believe the Debtor could successfully reorganize as evidenced by the fact that she had not filed a disclosure statement or plan of reorganization in the ten months since filing the case.

Thereafter, on October 30, 2012, the Debtor filed a disclosure statement and a chapter 11 plan; she proposed to cram down CI's lien on the Property to $205,000.00 (the Debtor's asserted value for the Property), and to modify the terms of CI's mortgage and promissory note by extending the maturity date for a period of 30 years and reducing the annual interest rate to 6%.[4] CI objected to the plan on various grounds, including that the Debtor should not be permitted to cram down its lien below the Property's market value or

use the rental income from the Property as a source of plan funding or personal support.

The bankruptcy court held a hearing on the motion for relief on May 1, 2013. The day before the hearing the parties submitted their respective appraisal reports. The Debtor's appraisal report valued the Property at $205,000.00; CI's appraisal report valued the Property in the range of $290,000.00 to $315,000.00. At the hearing, CI pressed the arguments it asserted in the relief from stay motion. The Debtor conceded she had no equity in the Property, but argued, among other things, that it was necessary for her reorganization because the excess rental income it produced would be sufficient to fund a reorganization plan. After hearing arguments from the parties, the bankruptcy court issued a bench ruling granting CI's motion. The Debtor then withdrew her chapter 11 plan in open court. The bankruptcy court followed its oral ruling with the entry of an order granting the motion for relief from the stay. It did not issue a written opinion elaborating upon its bench ruling. The Debtor appealed.

## BAP REMAND

On November 20, 2013, the Panel issued a decision in which it determined there was no issue before it as to the first prong for stay relief under § 362(d)(2)(A) because the Debtor did not dispute she lacked equity in the Property, and that the only issue was whether the Debtor had demonstrated the Property was necessary for an effective reorganization under § 362(d)(2)(B).[5] The Panel determined it

---

**3.** Although CI's motion included an alternate request for dismissal or conversion of the case under § 1112(b), neither the parties nor the bankruptcy court addressed that request at any of the hearings, and that issue is not before us in this appeal.

**4.** The promissory note provided for an annual interest rate of 7.5%.

**5.** *See Mercado v. Combined Invs., LLC (In re Mercado)*, BAP No. MB 13–021, 2013 WL 7118236 (1st Cir. BAP Nov. 20, 2013).

could not adequately review the bankruptcy court's decision as to that prong because the court did not make explicit findings of fact or conclusions of law on the elements of stay relief under § 362(d)(2)(B). The Panel vacated the order and remanded the matter to the bankruptcy court "to provide explicit findings of fact and conclusions of law" under § 362(d)(2)(B).

On remand, the bankruptcy court scheduled an evidentiary hearing for April 16, 2014. The day before the hearing the Debtor submitted a new appraisal valuing the Property at $275,000.00. At the outset of the hearing, taking into consideration the Debtor's recent appraisal and CI's appraisal, the bankruptcy court determined the Property's value was between $275,000.00 and $290,000.00. It then concluded, because the outstanding balance on the mortgage far exceeded any of the submitted appraised values, there could be no disagreement that the Property was "under water." Noting the parties did not dispute the Debtor's lack of equity in the Property, the bankruptcy court ruled that CI had met its initial burden under § 362(d)(2)(A), and the burden shifted to the Debtor to show that the Property was necessary for an effective reorganization.[6]

The Debtor maintained the Property was necessary to her reorganization because it produced rental income which could be used to fund a plan. In support, the Debtor testified that with respect to the Property she received total monthly rent of $5,878.00 and incurred total monthly expenses of $3,304.83 (which expenses included the adequate protection payments of $1,300.00 ordered by the court but no debt service to CI), leaving her with a monthly profit of $2,573.17. She explained she was receiving more monthly income on the Property than she had previously because she no longer owed back taxes on the Property, and that she anticipated the Property's cash flow would remain steady. She also testified she was maintaining the Property, and was paying all taxes, water and sewer bills, and the charges for the alarm system. Finally, the Debtor stated she thought the Property was necessary for her future reorganization because it was providing her with monthly net income of "[a]lmost $3,000.00."

In closing argument, the Debtor's counsel reiterated the Property was necessary for the Debtor's effective reorganization, and requested the court allow her to file a new chapter 11 plan based on the recent valuation, proceed to a confirmation hearing and, if necessary, increase the adequate protection payment amount to reflect the increased value of the Property. CI countered that the Debtor had not met her burden to show the Property was necessary for a reorganization, in part because the Debtor had not been straightforward about the value of the Property, the income it produced, or the status of the taxes throughout the pendency of the bankruptcy case. CI further asserted, based on the numbers provided by the Debtor, the income received from the Property was insufficient to pay debt ser-

---

**6.** Throughout the hearing the Debtor's counsel made several requests for the bankruptcy court to hear testimony from the appraisers and make a determination as to the exact value of the Property, arguing that setting a value would be necessary for a future confirmation hearing. The bankruptcy court denied such requests, indicating it was able to determine lack of equity based on the apprais-

al reports and that nothing more was needed at a motion for relief from stay hearing which is a truncated proceeding. The arguments and ruling regarding valuation appear to be superfluous in light of the limited remand for findings and conclusions on the necessity for reorganization prong under § 362(d)(2)(B). See infra pp. 761–62.

vice due CI, real estate taxes, and expenses of maintaining the Property. The bankruptcy court and CI's counsel then engaged in a discussion regarding debt service alternatives. Thereafter, the Debtor indicated "for the record" that the court had not addressed the issue of the application of the adequate protection payments.

> Ultimately, the bankruptcy court ruled: Okay. We started with half the work done because there's an agreement that the property is under water. It's now the debtor's burden to show that this property is necessary for a reorganization. And as the Supreme Court said in *Timbers,* there were two elements to be established: first, whether the property is necessary; and second, whether an effective reorganization is in prospect which means a reasonable possibility of a successful reorganization within a reasonable time.

> Let me deal with the first element. Is this property necessary to a reorganization? We have to consider three things. First of all, I'll accept the debtor's figures that her running expenses—that is, taxes, water, sewer, alarm—run her about $2,572 a month against current income of $5,800 a month. Now that does not consider debt service and we have to consider [ ] debt service. We can't just look at the adequate protection number that we worked out some time ago.

> Assuming the number is somewhere near to 290 [$290,000.00 value] and the debtor is coming pretty close to 275 [$275,000.00 value], so it's pretty much

> the same thing, and assuming a rational interest rate under the *Till* factors with which for this kind of property I would—I'd estimate eight percent is not unreasonable; nine percent would be unreasonable.

> Then, we're looking at a mortgage payment of $3,500 a month over 15 years because I'm not going to give Mr. Simmons five years. I don't think that flies. Now, if you take that 35[$3,500.00], plus the expenses, the property is under water. There just isn't enough money to pay the running expenses plus the mortgage.

> And there's one other thing we haven't considered at all and that's that there's no reserve here for capital expenses. I mean, roofs do leak, siding does have to be repainted from time to time. Things happen. Nasty things happen and they cost money and there's no money in this budget for that.

> So put it all together, I do not believe that this property would cash flow profitably and, therefore, I do not believe it is necessary for an effective reorganization. And as a result, the mo[tion] for relief from stay will be granted.

Thereafter, the bankruptcy court entered its order granting relief from the automatic stay. The Debtor appealed.[7]

### *JURISDICTION*

■ The Panel may consider appeals from final orders. 28 U.S.C. § 158(a)(1). An order granting relief from stay is a final, appealable order. *See Pinpoint IT Servs., LLC v. Rivera (In re Atlas IT Exp. Corp.),* 761 F.3d 177, 182 (1st Cir.2014)

---

7. The Debtor did not seek a stay pending appeal. As the Debtor's husband filed his own chapter 11 bankruptcy case in June 2013, and CI did not prevail on its motion for relief from stay in that case, it appears CI is enjoined from taking action against the Property. The bankruptcy court directed the Debtor's husband to immediately commence making adequate protection payments of $1,700.00 per month to CI, to be held by CI in escrow.

("Orders granting stay relief are orders 'disposing of a discrete dispute' and so are final and appealable as of right ...." ) (citation omitted); *see also Rodriguez Camacho v. Doral Fin. Corp. (In re Rodriguez Camacho),* 361 B.R. 294, 299 (1st Cir. BAP 2007). Accordingly, the Panel has jurisdiction to hear this appeal.

## STANDARD OF REVIEW

A bankruptcy court has considerable discretion in deciding whether to grant relief from the automatic stay and its decision should be disturbed only if there is an abuse of discretion. *See Aguiar v. Interbay Funding, LLC (In re Aguiar),* 311 B.R. 129, 132 (1st Cir. BAP 2004) (citing *Soares v. Brockton Credit Union (In re Soares),* 107 F.3d 969, 973 (1st Cir.1997)). An abuse of discretion occurs when a court "relies upon an improper factor, neglects a factor entitled to substantial weight, or considers the correct mix of factors but makes a clear error of judgment in weighing them." *Bacardi Int'l Ltd. v. Suárez & Co.,* 719 F.3d 1, 9 (1st Cir.2013) (citation omitted). Under the abuse of discretion standard, the appellate court accepts the bankruptcy court's findings of fact unless they are clearly erroneous. *Rockwood v. SKF USA Inc.,* 687 F.3d 1, 10 (1st Cir.2012) (citation omitted). The clearly erroneous standard is "a formidable standard, requiring a strong, unyielding belief that the bankruptcy judge made a mistake." *Sharfarz v. Goguen (In re Goguen),* 691 F.3d 62, 69 (1st Cir.2012) (internal quotations and citation omitted).

## DISCUSSION

Section 362(a)(1) provides that the filing of a bankruptcy petition automatically stays all acts against a debtor and property of the debtor's estate, subject to limited exceptions. 11 U.S.C. § 362(a)(1). Pursuant to § 362(d)(2), a creditor can seek to have the automatic stay lifted with respect to its claim as follows:

> On request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, annulling, modifying, or conditioning such stay—
>
> . . .
>
> (2) with respect to a stay of an act against property . . ., if—
>
> (A) the debtor does not have an equity in such property; and
>
> (B) such property is not necessary to an effective reorganization[.]

11 U.S.C. § 362(d)(2).[8] The requirements set forth in § 362(d)(2)(A) and (B) are expressed in the conjunctive, and, therefore, each element must be met for the court to grant relief under that section. *Tucy v. Digital Fed. Credit Union (In re Tucy),* No. MB 11–014, 2011 WL 4572026, at *3 (1st Cir. BAP Sept. 15, 2011) (citations omitted). As the moving party, CI had the initial burden of demonstrating the Debtor's lack of equity in the Property, and the Debtor had the burden of establishing that the Property was necessary for an effective reorganization. 11 U.S.C. § 362(g); *see also Aja v. Emigrant Funding Corp. (In re Aja),* 442 B.R. 857, 862 (1st Cir. BAP 2011) (citation omitted).

Here, the Panel's remand limited the scope of the bankruptcy court's review to consideration of the elements of stay relief

**8.** The parties do not dispute that although CI sought relief from the automatic stay under both § 362(d)(1) and (d)(2), the bankruptcy court granted relief from stay under § 362(d)(2) and did not address stay relief under (d)(1). Although the Debtor addresses § 362(d)(1) in her brief, given the limited scope of the remand, stay relief under § 362(d)(1) is not before the Panel.

under § 362(d)(2)(B). As such, the bankruptcy court did not need to revisit the issue of lack of equity under § 362(d)(2)(A).[9] Moreover, the record reflects that the parties at the remand hearing did not dispute the Debtor lacked equity in the Property. Thus, the only issue before the bankruptcy court was whether the Debtor met her burden to establish that the Property was necessary to an effective reorganization.

■ As the Panel noted in its earlier decision, § 362(d)(2)(B) presents two separate elements relating to the reorganization component that must be established for stay relief to be granted: first, whether the property is necessary to enable a debtor to reorganize; and second, whether an effective reorganization is in prospect. *See In re Mercado*, 2013 WL 7118236, at *5 (citing *In re Huggins*, 357 B.R. 180, 185 (Bankr.D.Mass.2006)). The Supreme Court has clearly articulated the debtor's burden under § 362(d)(2)(B):

> [I]t is the burden of the *debtor* to establish that the collateral at issue is "necessary to an effective reorganization." *See* [11 U.S.C.] § 362(g). What this requires is not merely a showing that if there is conceivably to be an effective reorganization, this property will be needed for it; but that the property is essential for an effective reorganization *that is in prospect*. This means, as many lower courts … have properly said, that there must be "a reasonable possibility of a successful reorganization within a reasonable time."

*United Sav. Ass'n of Tex. v. Timbers of Inwood Forest Assocs., Ltd.*, 484 U.S. 365, 375–76, 108 S.Ct. 626, 98 L.Ed.2d 740 (1988) (citation omitted).

■ "[W]hat § 362(d)(2) calls for is much more of a discretionary inquiry, rather than a mechanical one, which, at bottom, requires the court to make a judgment call as to whether the debtor is making sufficient progress towards a sufficiently realistic goal such that its efforts should be allowed to continue." *In re SW Boston Hotel Venture, LLC*, 449 B.R. 156, 179 (Bankr.D.Mass.2011) (quoting *In re Brian Wise Trucking, Inc.*, 386 B.R. 215, 219 (Bankr.N.D.Ind.2008)). Various courts have developed a list of requirements that a debtor should show in order to meet its burden under § 362(d)(2)(B):

1. The debtor must be moving meaningfully to propose a plan;

2. The plan must provide that the lender's allowed secured claim would be valued and payable from the debtor's net operating income generated by its property or the ability to propose a plan based on the infusion of new capital, sale, or other viable means;

3. The plan must have a realistic chance of confirmation;

4. Without deciding the issue with the same scrutiny as a confirmation hearing, the debtor's proposed plan must not be obviously unconfirmable;

5. The reorganization must occur in a reasonable period of time. In this regard the factors to look at are:

    a. the negotiations among the parties;

**9.** *See Gonsalves v. Belice (In re Belice)*, 480 B.R. 199, 203 (1st Cir. BAP 2012) ("With little exception, a court is required on remand to address only that which has been remanded.") (citing *Kotler v. Am. Tobacco Co.*, 981 F.2d 7, 13 (1st Cir.1992), *vacated on other grounds*, 505 U.S. 1215, 112 S.Ct. 3019, 120 L.Ed.2d 891 (1992); *Biggins v. Hazen Paper Co.*, 899 F.Supp. 809 (D.Mass.1995); *Hermosilla v. Hermosilla (In re Hermosilla)*, 450 B.R. 276 (Bankr.D.Mass.2011) (recognizing lower court must follow the "the letter and [the] spirit of the mandate, taking into account the appellate court's opinion and the circumstances it embraces.") (internal quotations and citations omitted)). Any exceptions to this rule would not apply in this case. *See Kotler*, 981 F.2d at 13.

b. the amount of time that the debtor has been in possession and operating the business;

c. the length of time since the expiration of the exclusivity period.

*Id.* (citations omitted). "The list is illustrative, not exhaustive, and the factors are meant to provide an outline of considerations." *Id.* (citation omitted).

At the remand hearing, the Debtor's counsel argued the Property was necessary to her reorganization because it produced rental income which the Debtor could use to fund her plan, emphasizing the Debtor's testimony supporting her contention that it was providing her with monthly net income of "almost $3,000.00." Although the Debtor testified she expected the rental income to remain steady, she did not provide any further information about the Property, its condition, how she expected to maintain full occupancy (and thus "steady rents") going forward, or how she would handle any major expenses relating to the Property (which are likely to arise in a 100® year old building).

Nor did the Debtor offer any testimony regarding payment of debt service on CI's secured claim. Thus, after the Debtor rested, the bankruptcy court engaged in a discourse with CI's counsel regarding debt service alternatives. Based on what it concluded to be reasonable scenarios, the bankruptcy court determined the on-going expenses and debt service expense for the Property exceeded the amount of rental income it generated and excess income would not be available from the Property to fund the Debtor's reorganization plan.

The Debtor's two main arguments on appeal are that the bankruptcy court's findings were erroneous because it: (1) refused to hear direct testimony from the appraisers regarding the Property's precise value; and (2) did not consider the loan agreement interest rate and repayment term when analyzing her ability to service the mortgage; instead, she argues, it relied on debt service factors that were related to valuation (such as cramdown values, pre-petition contractual mortgage terms, and the Debtor's prospective plan terms).[10]

■ Turning to the Debtor's first contention, the bankruptcy court did not err in relying on the appraisers' reports in lieu of testimony. Despite her complaint, the Debtor sought to present this testimony only to establish a specific value for the Property and solely for purposes of § 362(d)(2)(A). While she argues the bankruptcy court "curtailed" her right to meet her burden under § 362(d)(2)(B) by refusing such testimony, she did not proffer the testimony for, or present any argument concerning what impact such specific valuation would have had on her ability to reorganize or how that evidence would have shown that a reasonable prospect for a reorganization was in progress.[11] As such, the Debtor's argument on this point fails.

We next turn to the Debtor's second contention—that the bankruptcy court

---

**10.** Without much explanation, the Debtor also faults the bankruptcy court's failure to factor in her adequate protection payments. The Debtor did not, however, address the issue when presenting her case at the remand hearing. Rather, the Debtor mentioned adequate protection payments only after the bankruptcy court issued its ruling and only to "put it on the record." The purpose of adequate protection payments during a case is to preserve the status quo, and the Debtor offered no explanation at the remand hearing as to the impact such payments would have on her cash flow or her ability to reorganize. Thus, the Debtor did not in fact preserve the issue for appeal and it is waived. *See Fish Mkt. Nominee Corp. v. Pelofsky,* 72 F.3d 4, 6 (1st Cir.1995) (noting that arguments not raised in bankruptcy court are waived on appeal) (citation omitted).

**11.** The Debtor repeatedly asserts she should have been permitted to present the testimony

erred when calculating her ability to service CI's debt by failing to consider the contract rate of interest of 7.5% under the promissory note, and the remaining mortgage term of 23 years.[12] The record does not reflect that she raised this issue before the bankruptcy court other than her brief interjections into the court's colloquy with CI regarding debt service. Instead, the record reveals that after the Debtor rested on her arguments, the bankruptcy court raised this issue in its colloquy with CI's counsel. As part of its ruling on stay relief, the bankruptcy court approximated a debt service amount which it added to the figures the Debtor had provided. Based on those figures the court found that the Property would not produce a positive cash flow and as a result the Property was not necessary for an effective reorganization.[13]

In remanding this matter, the Panel issued instructions for the bankruptcy court to set forth its explicit findings and conclusions regarding the elements of stay relief under § 362(d)(2)(B) or, in its discretion, to hold further proceedings concerning relief under that provision. The Panel was clear that at any remand hearing held, it would be the Debtor's burden to demonstrate that the Property was necessary for the reorganization of her financial affairs *and* that there was an effective reorganiza-

tion in prospect. To meet her burden, it was essential the Debtor show she was "moving meaningfully to propose a plan" that had a "realistic chance of confirmation" and that reorganization would occur "in a reasonable period of time." *SW Hotel*, 449 B.R. at 178–79 (citations omitted). Despite the Panel's clear guidance and the case law in this circuit, she failed to meet that burden.

At the remand hearing held more than two years after the commencement of the case, there was no proposed plan of reorganization pending. The Debtor did not provide any further information about the Property and its condition, or how she expected to maintain a stable cash flow going forward or how she would address routine and any non-routine property maintenance expenses for a property of its age. Furthermore, at the hearing, the Debtor did not provide the bankruptcy court with any kind of outline of a potential reorganization plan, or explain how such a plan would treat CI's secured and unsecured claims. She did not testify about her other creditors, expenses, assets, aggregate income, or capital expenses. She offered no exhibits or other witnesses, other than her appraiser who would have testified concerning the value of the Property in which she lacked any equity. In short, the Debtor failed to demonstrate

of her appraiser. The transcript reflects, however, that when she asked the bankruptcy court to have the appraiser testify it was to establish value for purposes of subsection (d)(2)(A) or for an unspecified confirmation hearing. She never represented that she wanted to have the appraiser opine on matters related to a potential plan. Moreover the bankruptcy court treated the appraisal reports of both parties as direct testimony for purposes of the hearing.

12. · The Debtor does not argue the bankruptcy court erred in finding the Property was not necessary for her reorganization based on a cash flow analysis; rather she focuses solely

on the methodology employed by the court to determine the Property's net revenues available to fund a reorganization plan.

13. Even taking into consideration the monthly amount the Debtor has been paying in adequate protection payments, the bankruptcy court's finding of lack of sufficient excess cash flow generated by the Property to fund a plan, taking into account an appropriate figure for debt service, and considering the lack of inclusion by the Debtor in her expense budget for any probable future maintenance repairs, is not far off the mark and certainly not an abuse of discretion.

that she had a confirmable reorganization plan in prospect.

A debtor's burden under this prong of § 362(d)(2)(B) cannot be fulfilled by merely manifesting unsubstantiated hopes for a successful reorganization. Thus, "[a] debtor must do more than merely assert that it can reorganize if only given the opportunity to do so." *Ripon Self Storage, LLC v. Exchange Bank (In re Ripon Self Storage, LLC)*, BAP No. EC–10–1325–HkiD, 2011 WL 3300087, *5 (9th Cir. BAP Apr. 1, 2011) (citation omitted). After reviewing the record, we agree that the Debtor did not provide evidence demonstrating her ability to reorganize within a reasonable time and failed to satisfy her burden under § 362(d)(2)(B). Thus, we conclude that the bankruptcy court did not abuse its discretion in granting CI relief from the stay.

## CONCLUSION

The bankruptcy court's order issued after remand granting CI relief from the stay is **AFFIRMED**.